UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

GLENN WHITING and ARD PROPERTIES,    )
                                     )
                Plaintiffs,          )
                                     )
v.                                   )          No. 3:20-CV-54-TRM-DCP
                                     )
CHRIS TREW, *et al.*,                )
                                     )
                Defendants.          )

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court are Defendants' Renewed Motion to Compel [Doc. 30] and Plaintiffs' Motion for Protective Order and to Quash Defendants' Subpoenas [Doc. 33]. The parties appeared before the Court for a motion hearing on September 23, 2020. Attorney Van Irion appeared on behalf of Plaintiffs, while Plaintiff Whiting was also present. Attorney Dan Pilkington appeared on behalf of Defendants. After the hearing, the Court allowed Plaintiffs to file a supplement to their motion for a protective order, with Defendants being granted the opportunity to file a response. Plaintiffs subsequently filed a Supplement [Doc. 40] and Affidavit [Doc. 40-1] in support of their request on September 29, 2020, with Defendants filing a Supplemental Response [Doc. 41] on October 6, 2020. For the reasons set forth below, Defendants' Renewed Motion to Compel [Doc. 30] and Plaintiffs' Motion for Protective Order and to Quash Defendants' Subpoenas [Doc. 33] will be **DENIED**.

## I.    DEFENDANTS' RENEWED MOTION TO COMPEL

By way of background, the Complaint in this case arises out of allegations involving the First Amendment to the United States Constitution. [Doc. 1]. Specifically, Plaintiffs allege that

Defendants and other Athens city officials, have taken official action and have threatened to take further actions against Plaintiff Whiting for expressing his political views, including his views expressed during public meetings and via a display on the exterior wall of a building. [*Id.* at ¶ 9]. Relevant to the instant matter, in Plaintiffs' Complaint, they allege that Plaintiff Whiting met with Defendant Trew, the City Attorney for the City of Athens, about Plaintiff Whiting's intention to paint a message on the side of a building. [*Id.* at ¶ 38]. Plaintiffs allege that Plaintiff Whiting recorded his conversation with Defendant Trew. [*Id.*].

The Court previously granted in part Defendants' motion to compel [Doc. 25] on June 22, 2020. [Doc. 29]. The Court noted that Plaintiffs have specifically alleged in their Complaint that Plaintiff Whiting recorded a conversation between himself and Defendant Trew concerning Plaintiff Whiting's intention to paint the building. [Doc. 1 at ¶ 38]. As previously mentioned, when Defendants requested communications with employees or city council members of the City of Athens about the incidents and claims alleged in the lawsuit, Plaintiffs identified Plaintiff Whiting's conversations with Gene McConkey, the Building Inspector for the City of Athens, Defendant Sumner, and Defendant Trew, all of whom Plaintiff Whiting recorded (collectively, the "Recordings"). [Doc. 25-2 at 10].

However, despite listing the Recordings as being in Plaintiffs' possession in their Initial Disclosures, their response to Defendants' Interrogatory No. 14 stated that the "Recordings are currently not within the control of the Plaintiffs, but are in control of Randy Whiting, Orlando, FL, and will be disclosed as soon as retrieved." [*Id.*]. Randy Whiting, Plaintiff Glenn Whiting's brother, subsequently filed a motion to quash [Doc. 14] the subpoenas that Defendants served to obtain the Recordings. Defendants later moved to compel [Doc. 25] the Recordings after Plaintiffs stated that Plaintiff Whiting had recording the conversation he had with Defendant Trew on his

2

cell phone and made two flash drives of the recording, that his cell phone subsequently crashed, and that he sent the flash drives to his brother for safekeeping—but that Randy Whiting could no longer locate the flash drives.

The Court found the Recordings highly relevant in this case and found that Plaintiff Whiting had the practical ability and/or legal right to obtain the recordings at issue from his brother. [Doc. 29 at 7]. Therefore, the Court ordered Plaintiff Whiting to produce the Recordings within fourteen days (July 6, 2020), and stated that if they could not be found after a diligent search, Plaintiff Whiting should "supplement his response to Defendants' discovery requests outlining in detail the efforts he took to locate the Recordings." [*Id.* at 8]. Defendants also requested that Plaintiffs provide a text message between McConkey and Plaintiff Whiting, as well as identify the officials referenced in the Complaint but not identified. The Court ordered Plaintiffs to supplement their discovery responses within the same fourteen day timeframe. [*Id.*]. Lastly, in response to Defendants' request to inspect Plaintiff Whiting's cell phone, the Court directed that if Plaintiff Whiting was unable to produce the Recordings, the parties should meet and confer regarding a forensic inspection. [*Id.*].

On July 6, 2020, Plaintiff Whiting served his Supplemental Response to Defendants' First Set of Requests for Production [Doc. 30-1], stating that "Randy Whiting has made diligent efforts to locate the flash drive containing the [R]ecordings," and attaching a copy of the email from Randy Whiting to Plaintiff Glen Whiting detailing his efforts to locate the flash drive and photographs of Randy Whiting's office with a water damaged roof. The parties continued to communicate regarding Defendants' belief that Plaintiffs had not complied with the Court's previous order. Specifically, on July 6, 2020, Defendants' counsel documented his position regarding the failure of Plaintiffs' supplemental disclosure to satisfy the requirements of the

Court's June 22 Order in an email to Plaintiffs' counsel, and he requested that a compliant supplement be provided by the end of the week (Friday, July 10). [Doc. 30-2]. On July 8, Defendants' counsel sent another email to Plaintiffs' counsel summarizing a conversation regarding the discovery requests that took place on July 7 when the parties met for the deposition of Defendant Trew. That communication reflects that, at that time, Plaintiffs did not intend to provide additional discovery regarding the Recordings.

Defendant now moves [Doc. 30] the Court for sanctions pursuant to Plaintiffs' alleged failure to cooperate in discovery by failing to produce the Recordings, not outlining in detail the efforts taken to obtain the Recordings, not identifying the city officials or employees referenced in the Complaint, and failing to respond to Defendants' request to inspect Plaintiff Whiting's cell phone. Therefore, Defendants specifically request their costs and attorney's fees associated with the original motion to compel, the Court's previous hearing, and the present motion to compel.

Plaintiffs respond [Doc. 31] that they have identified all individuals discussed in the Complaint to the best of their ability, that Plaintiffs provided a copy of the text message to defense counsel, and that Plaintiffs provided a thumb drive with all recordings at issue to defense counsel.[1] Defendants reply [Doc. 32] that Plaintiffs' failure to comply with the Court's previous order resulted in substantial prejudice, as the Recordings and text message at issue were not provided until after Plaintiffs' deposition of Defendant Trew. Defendants assert that "[a]lthough some of the evidence has now been produced, the Defendants have incurred additional costs and fees in

---

[1] The Court notes that the parties also point to several alleged misrepresentations of facts in the opposition's briefing which the Court finds are not material to its decision on the pending motion to compel. In general, the Court cautions the parties against focusing on alleged misrepresentations of facts and timing, rather than addressing the arguments and case law that would be central to the Court's ruling.

pursuing clearly relevant and discoverable evidence that was at one time within the sole possession of the Plaintiff." [*Id.* at 4].

Federal Rule of Civil Procedure 37 governs the use of sanctions with respect to discovery failures. Specifically, Rule 37(b)(2) lists potential sanctions for the failure to obey a previous order to provide or permit discovery. Fed. R. Civ. P. 37(b)(2); *see also* Fed. R. Civ. P. 37(c)(1) (discussing sanctions for failure to supplement discovery). Further, Rule 37(b)(2)(C) provides:

> (C) *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C).

In determining whether sanctions are appropriate pursuant to Rule 37, the Sixth Circuit has utilized four factors. *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997). Specifically, the Sixth Circuit has explained as follows:

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered.

*Id.* "A court is vested with wide discretion in determining an appropriate sanction under Rule 37." *Little Hocking Water Assn., Inc. v. E.I. du Pont de Nemours & Co.*, 94 F. Supp. 3d 893, 902 (S.D. Ohio 2015).

During the September 23 hearing, the parties advised that the Recordings were produced on July 14, 2020—one week after the deposition of Defendant Trew— and that Defendants have

received all available recordings as well as the text message at issue.[2]  Plaintiff Whiting testified regarding the efforts made to locate the Recordings.  Additionally, Plaintiffs stated that the Recordings were discovered after Plaintiff Whiting thought to contact an individual who services his phones, and this individual was able to find a backed-up recording.  Plaintiffs claimed that Plaintiff Whiting contacted the individual on Friday, July 10, 2020, copies of the Recordings were provided to Plaintiffs' counsel on Monday, July 13, and a copy was provided to Defendants' counsel on Tuesday, July 14.

Ultimately, the Court finds that sanctions are not appropriate in this instance for several reasons.  First, the Recordings and the text message at issue have been provided to Defendants, and Plaintiffs have stated that they are not able to further identify any additional individuals in the Complaint at this time.  Second, Defendants have failed to sufficiently explain how they have been prejudiced.  While Defendants took issue with Plaintiff's initial supplemental response filed on July 6, they did not seek redress through the Court in testing the sufficiency of the response prior to the July 7 deposition of Defendant Trew.  Instead, Defendants arbitrarily set another deadline of July 10 for Plaintiffs to further supplement their response, which was after Defendant Trew's deposition.  While Defendants claim that they were substantially prejudiced in that "Plaintiffs were permitted to depose Defendant Trew before belatedly producing critical evidence," they do not fully explain the prejudicial effect, making no claim that any changes need to be made in Defendant Trew's deposition after having reviewed the Recordings.  [Doc. 32 at 2].  Third, Plaintiff Whiting explained during the hearing that while earlier efforts had been focused on trying to retrieve the Recordings from his brother, he finally had the thought to check with the individual who services his phone to see if any backup was available, but it was not until July 10, the deadline Defendants

---

[2] At the hearing, the parties clarified that the recordings did not capture the full conversation of the parties due to a suspected software issue.

imposed for further supplementation. As soon as the availability of the Recordings became known, copies were made and delivered to Defendants' counsel within a matter of days. While the timing of Plaintiff Whiting's inquiry of the service provider was unfortunate, there is no basis for the Court to find that his delay was due to willfulness, bad faith, or fault, and the inquiry ultimately resulted in providing the Recordings to Defendants. Lastly, the Court finds that its previous order [Doc. 29] did not compel Plaintiffs to produce Plaintiff Whiting's cell phone; rather, it directed the parties to meet and confer regarding the forensic inspection of Plaintiff Whiting's phone if the Recordings could not be produced. Therefore, Defendants' Renewed Motion to Compel [**Doc. 30**] is **DENIED**.

## II.    PLAINTIFFS' MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENAS

### A.    Positions of the Parties

Plaintiffs move [Doc. 33] to quash the subpoenas previously served by Defendants on Title Insurance Company of Athens, Mortgage Investment Group, and The Big Belly Deli on August 11, 2020 directing these third parties to produce "lease agreements or other contacts[3] with the landlord of the building located at 12 E. Washington Avenue, Tennessee 37303; Any documents evidencing to whom rent payments were or are made." [*Id.* at 1]; *see* [Doc. 34-1]. Plaintiffs contend that these subpoenas are intended to harass them and their tenants, the information and documents demanded are not relevant, and the subpoenas fail to allow a reasonable time to comply under Rule 45(d)(3)(A)(i).

Plaintiffs assert that these subpoenas are an attempt by the City of Athens to intimidate Plaintiff Whiting, as during his deposition, he refused to answer questions related to his personal

---

[3] It is not clear whether the wording is meant to be "contact" or "contract," but in any event, it will be quoted as it appears in the subpoenas.

income, tax returns, employment, and financing of any trust. Plaintiffs submit that Defendants refused to agree to a proposed protective order, which would allow them to obtain all of the requested information—with the understanding that this information could be used only for the purposes of this lawsuit. Additionally, Plaintiffs claim that the subpoenas do not allow a reasonable time to comply, as the subpoenas were issued on August 11, 2020 and demand production by August 28, 2020. Lastly, Plaintiffs request that the Court "issue the proposed protective order which forbids disclosure, discovery, or inquiry into the incomes of Mr. Whiting, without further order of this Court." [Doc. 33 at 5]; *see* [Doc. 33-5].

Defendants first respond [Doc. 34] that Plaintiffs' motion should be denied, and note that they issued subpoenas to the tenants of the building in downtown Athens referred to as the "Jackson Street" building. Defendants claim that the Jackson Street building is repeatedly referenced in the Complaint, and "[t]he parties dispute whether Plaintiff Whiting is the owner of the Jackson Street building, whether he collects rent from any of the tenants, and the nature of the relationship he has with the tenants of that building." [*Id.* at 3]. Defendants assert that "Plaintiff has clearly placed his income and relationship with the Jackson Street building at issue," as Plaintiffs have alleged that Defendants took official action against Plaintiffs in retaliation for Plaintiff Whiting's message painted on the wall of the Jackson Street building; the Complaint alleges that Plaintiff was ordered to remove an awning from the Jackson Street building; the Complaint specifically references an alleged tenant of Plaintiff Whiting in the Jackson Street Building; and Plaintiff Whiting is seeking lost rental income as damages. [*Id.*].

Defendants state that they attempted to obtain this information through the deposition of Plaintiff Whiting, who refused to answer the questions citing his privileges against self-incrimination guaranteed by the Fifth Amendment. Defendants state that they are not aware of

any criminal activity implicated by the challenged questioning. Defendants point to communications between counsel in response to Plaintiffs' assertion that they provided no response to articulate a good faith basis for issuing the subpoenas.

Next, Defendants assert that Plaintiffs lack standing to challenge the third-party subpoenas, as they have not moved to quash the subpoenas based upon a personal right or privilege, as well as that no grounds exist to quash the subpoenas. With respect to Plaintiffs' request for a protective order, Defendants assert that the proposed protective order would preclude any discovery into Plaintiff Whiting's income and preclude such information from being considered by the Court.

Plaintiffs reply [Doc. 35] that Plaintiff Whiting has not refused to voluntarily appear at a deposition, and that Plaintiff Whiting "has a legitimate fear that the defendants will use this Court's authority during discovery to obtain information for the specific purpose of further harassing [him]." [*Id.* at 4]. Plaintiffs note that Defendant Trew's law partner, attorney Bill Biddle, has performed legal work for Plaintiff Whiting in the past, and Defendant Trew "has access to information that could be very damaging to Mr. Whiting and the Whiting family should that information be divulged to certain government agencies." [*Id.* at 3].

Additionally, Plaintiffs maintain that Defendants have failed to establish the relevance of Plaintiff Whiting's personal income, as the Complaint makes clear that the lost income damage claim arises from Defendant Sumner's ordering of the demolition of the "Pope Avenue" building. [*Id.* at 6]. Plaintiffs assert that the Complaint does not allege any damages arising from any action taken by the City of Athens against the Jackson Street building, and ownership of the Jackson Street building is not relevant to the claims asserted. Here, Plaintiffs claim that discussion of the Jackson Street building was included in the Complaint as background information, and Plaintiff Whiting is willing to stipulate that he manages, rather than owns, the Jackson Street building.

Lastly, Plaintiffs maintain that they have standing to quash the subpoenas as Plaintiff Whiting "is prosecuting his personal right, protected under the First Amendment, to not be punished or intimidated in retaliation for his political speech," as well as that Plaintiff Whiting has the personal right "to not be punished or intimidated for exercising his right to petition this court for redress of grievances." [*Id.* at 9].

Following the September 23 hearing, Plaintiffs filed their supplement [Doc. 40] in support of their motion to quash. First, Plaintiffs noted that, in response to the Court's questioning, it was unable to find any cases with similar circumstances, but maintained that Plaintiffs have an established First Amendment right to free speech, "which is being directly punished/threatened by agents of local government." [*Id.* at 2]. Additionally, Plaintiffs claim that courts have entered protective orders despite finding that a defendant did not have standing to quash a subpoena, citing *Elvis Presley Enters., Inc. v. City of Memphis, Tennessee*, No. 2:18-CV-02718-SHM-DKV, 2020 WL 4283279, at *4 (W.D. Tenn. Apr. 6, 2020), *aff'd*, 2020 WL 4015476 (W.D. Tenn. July 16, 2020) and *Waite, Schneider, Bayless & Chesley Co. L.P.A. v. Davis*, No. 1:11-CV-0851, 2013 WL 146362, at *5 (S.D. Ohio Jan. 14, 2013). Therefore, Plaintiffs submit that the proposed protective order [Doc. 40-2] should be entered and included with the subpoenas, if not quashed, "to prevent governmental defendants from intimidating plaintiffs . . . ." [Doc. 40 at 3]. Plaintiffs also submit the declaration of Plaintiff Whiting, stating that he does not intend to claim damages based upon the loss of any personal income. [Doc. 40-1].

Defendants respond [Doc. 41] that Plaintiffs concede that they do not have standing to quash the third-party subpoenas. Additionally, Defendants maintain that Plaintiffs' motion for a protective order should be denied, as the proposed protective order would forbid any discovery into Plaintiff Whiting's personal income. Moreover, Defendants assert that a protective order is

10

improper because information related to ARD Properties and Plaintiff Whiting's relationship with ARD Properties is relevant to this case. Plaintiffs claim that "[b]y filing a lawsuit and seeking damages, Plaintiffs have placed their income, sources of income and business relationships at issue" and cite to the numerous references in the Complaint to Plaintiffs' business interests and relationships. [*Id.* at 4].

Here, Defendants submit that "[d]iscovery of additional information about Plaintiff Whiting and ARD Properties is necessary to validate the allegations raised by the Plaintiffs and ascertain the relationship between ARD Properties and Plaintiff Whiting." [*Id.* at 5]. Defendants also assert that Plaintiff Whiting has placed his financial information at issue by claiming that he was unable to perform repairs on the Pope Avenue building. Additionally, Defendants allege that Plaintiff Whiting should not be permitted to assert his Fifth Amendment privilege against self-incrimination when he has not set forth a real danger of incrimination. Lastly, Defendants asserts that the Plaintiffs should be compelled to provide Plaintiff Whiting's tax returns, or alternatively, Plaintiff Whiting should be compelled to sign IRS Form 4506.

### B. Analysis

Federal Rule of Civil Procedure 45 governs the use of subpoenas. Specifically, Rule 45(d)(3)(A) provides that a court must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.

"Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought." *Diamond Resorts Int'l, Inc. v. Phillips*, No. 3:17-CV-01124,

2018 WL 4328257, at *2 (M.D. Tenn. July 16, 2018) (quoting 9A Charles Alan Wright and Arthur R. Miller, et al., *Federal Practice and Procedure* § 2549 (3d ed.)); *see also White Mule Co. v. ATC Leasing Co., LLC*, No. 3:07-cv-057, 2008 WL 2680273, at *4 (N.D. Ohio June 25, 2008) ("In the absence of a claim of privilege, propriety interest, or personal interest, a party has no standing to quash a subpoena directed at a non-party.") (internal citations omitted). However, "where a party's standing may fall short to quash a subpoena under Rule 45, Rule 26(c) affords parties the ability to move for a protective order on a third party's behalf." *Diamond Resorts*, 2018 WL 4328257 at *2; *see, e.g.*, *Callidus Capital Corp. v. FCA Grp.*, No. 14-10484, 2018 WL 1556231, at *3 (E.D. Mich. Mar. 30, 2018) ("Therefore, this court must consider whether the subpoenas' requests are 'overly broad or seek[ ] irrelevant information under the same standards set forth in Rule 26(b) and as applied to Rule 34 requests for production.'") (quoting *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003)).

### 1.    Standing

As detailed above, a party generally does not have standing to quash a subpoena issued to a third party unless the objecting party may claim a personal right or privilege with regard to the documents sought. *Diamond Resorts*, 2018 WL 4328257 at *2. Plaintiffs claim that they have standing to quash the subpoenas issued to the tenants of the Jackson Street building based on Plaintiff Whiting's personal right under the First Amendment to be free from harassment from a governmental entity in retaliation for his political speech, as well as his First Amendment right to be free from retaliation for filing the instant lawsuit.

However, in their supplemental briefing following the hearing, Plaintiffs admitted that they were unable to find any applicable case law quashing a subpoena based upon a similar First Amendment right. Moreover, Plaintiffs have not detailed how the subpoenaed information is

12

similar to a type of information that this Court—or any court—has previously recognized as giving rise to standing to quash a subpoena issued to a third-party. *See, e.g.*, *Waite, Schneider, Bayless & Chesley Co. L.P.A. v. Davis*, No. 1:11-CV-0851, 2013 WL 146362, at *5 (S.D. Ohio Jan. 14, 2013) ("Such rights or privileges have been recognized with respect to personal bank records, information in a personnel file, corporate bank records, or Indian tribal records.") (internal citations omitted). Lastly, Plaintiffs have not established that these subpoenas are intended to infringe upon Plaintiff Whiting's First Amendment rights sufficient for the Court to find he has standing to seek to quash the subpoenas issued to third parties.

Plaintiffs correctly state that "[p]ersonal rights or interests sufficient to confer standing to quash or object to a subpoena can arise in a variety of contexts." *Boodram v. Coomes*, No. 1:12-CV-057-JHM, 2016 WL 11333789, at *2 (W.D. Ky. Jan. 28, 2016). However, the Court does not find that the subpoenas seek personal information similar to analogous cases involving employment records or personal bank records. *See Sys. Prod. & Sols., Inc. v. Scramlin*, No. 13-CV-14947, 2014 WL 3894385, at *7 (E.D. Mich. Aug. 8, 2014) ("For example, courts have recognized that a party has a personal interest in his or her employment records held by a subpoenaed non-party . . . and in banking records of a party in the possession of a financial institution . . . ."). The subpoenas seek the lease agreements and other contacts of the tenants of the Jackson Street building—a building at the heart of this lawsuit. While Plaintiffs have alleged a retaliation claim under the First Amendment, and Plaintiffs assert that these subpoenas are evidence of continued harassment, Plaintiffs cannot demonstrate an adequate personal interest in the lease agreements and contacts. Therefore, the Court finds that Plaintiffs are unable to claim any personal right or privilege in the documents sought from the third-party tenants of the Jackson Street building, and thus lack standing to move to quash the subpoenas at issue.

13

### 2. Request for Protective Order

Courts have recognized that "the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio May 6, 2011) (citing *Barrington v. Mortgage IT, Inc.*, No. 07-61304-CIV, 2007 WL 4370647, *3 (S.D. Fl. Dec. 10, 2007)). Rule 26 authorizes the court "for good cause shown" to issue a protective order to protect a person "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Good cause exists if 'specific prejudice or harm will result' from the absence of a protective order." *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016) (internal citation omitted). Rule 26 further provides that the court must limit the extent of discovery otherwise allowed by the Rules if it determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Federal Rule of Civil Procedure 26(b)(1) provides that:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Additionally, the "scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 242 (N.D. Ohio 2017) (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)).

14

Therefore, the Court must also consider whether Plaintiffs have established good cause for the issuance of a protective order. *See Elvis Presley Enters., Inc. v. City of Memphis, Tennessee*, 2020 WL 4015476, at *14 (W.D. Tenn. July 16, 2020) ("However, '[u]nder Rule 26(c), a party may move for a protective order to protect itself from annoyance, embarrassment, oppression, or undue burden or expense, regardless of whether the moving party is seeking to prevent disclosure of information by a nonparty, as long as the moving party can tie the protected information to an interest listed in the rule . . . .'") (quoting *HDSherer LLC v. Nat. Molecular Testing Corp.*, 292 F.R.D. 305, 307 (D.S.C. 2013) (additional internal quotation marks and citations omitted)).

Plaintiffs seek for the Court to enter the proposed protective order to protect the personal interests of Plaintiff Whiting and to "prevent governmental defendants from intimidating plaintiffs into dismissing legitimate First Amendment retaliation claims." [Doc. 40 at 3]. Plaintiffs contend that the subpoenas are intended to be issued "for the sole purpose of annoying and oppressing the plaintiffs regarding matters that have nothing to do with the instant lawsuit." [Doc. 33 at 5]. Plaintiffs point to Plaintiff Whiting's alleged "legitimate fear that the defendants will use this Court's authority during discovery to obtain information for the specific purpose of further harassing [him]." [Doc. 35 at 4]. The proposed protective order [Doc. 40-2] "orders that the defendants shall not inquire into the personal income of Glenn Whiting. Additionally, the defendants shall not serve subpoenas upon any of the tenants of the building located at the corner of Jackson Street and Washington Avenue in Athens, Tennessee, without further order of this Court." [*Id.*].

In support of their request for a protective order, Plaintiffs first contend that Defendants have failed to establish the relevance of Plaintiff Whiting's personal income. Plaintiffs assert that "[a]ll rent and loss of use damages alleged in the Complaint arise from the City's condemnation

15

of the Pope Street building," and thus the requested information related to the Jackson Street building is not relevant. [Doc. 35 at 6]. Here, Plaintiffs maintain that ownership of the Jackson Street building is not relevant to the claims asserted, and Plaintiffs are willing to stipulate that Plaintiff Whiting merely manages the Jackson Street building.

However, with respect to the subpoenas at issue, central to the Court's analysis is what is actually requested—directing the third-party tenants to provide "lease agreements or other contacts with the landlord of the building located at 12 E. Washington Avenue, Tennessee 37303; Any documents evidencing to whom rent payments were or are made." *See* [Doc. 34-1]. Parties may obtain discovery on any matter that is not privileged and is relevant to any party's claim or defense if it is reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

Here, the Jackson Street building is at the heart of Plaintiffs' Complaint, as Plaintiffs have alleged that the political message painted on the Jackson Street building led to the retaliation at issue. *See* [Doc. 1 at ¶¶ 11–13]. Additionally, Plaintiffs have alleged that the City refused the request of a tenant of the Jackson Street building to add steps in front of one of her building entrances due to Plaintiff Whiting. [*Id.* at ¶ 26]. Regardless of whether Plaintiff Whiting owns or manages the building, the Complaint alleges that this decision by the City was "motivated solely by animus toward Mr. Whiting." [*Id.*]. Plaintiffs also allege that after being informed of Plaintiff Whiting's intention to post his message on the Jackson Street building, Defendant Sumner ordered Athens Building Inspector McConkey to issue a citation against Plaintiff Whiting ordering him to remove an awning installed on the building, despite other buildings having similar awnings. [*Id.* at ¶ 33]. Plaintiffs similarly allege that the Jackson Street building "owned by the plaintiffs was

purchased by the plaintiffs from the City," which the City "forced the previous owner out by regulatory harassment, without any intention of actually enforcing [a] regulation." [*Id.* at ¶ 35].

Accordingly, given the broad scope of discovery, the Court finds that Plaintiffs have not established that the requested information is not relevant. The Court notes that relevance in discovery is more liberal than the trial setting, as Rule 26(b) allows any "line of interrogation [that] is reasonably calculated to lead to the discovery of admissible evidence." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (internal citation omitted). Plaintiffs have sufficiently placed the Jackson Street building, as well as its tenants and ownership, at issue in their Complaint. The challenged subpoenas are therefore reasonably calculated to lead to the discovery of admissible evidence.

Next, the Court considers whether Plaintiffs' arguments that the subpoenas are intended to be used by Defendants to continue to harass Plaintiff Whiting. Plaintiff Whiting refused to answer questions related to his personal income, tax returns, and employment and financing of any trust during his deposition on the grounds of his Fifth Amendment right against self-incrimination. Plaintiffs assert that Defendants are attempting to obtain information regarding his personal finances that they know "could be very damaging to Mr. Whiting and the Whiting family should that information be divulged to certain government agencies." [Doc. 35 at 3].

Ultimately, the Court finds that Plaintiffs have not established good cause for the issuance of a protective order, as they are unable to demonstrate a specific prejudice or harm. *See In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016). At best, Plaintiffs have speculated their fear that certain financial information will be used adversely against Plaintiff Whiting. However, the subpoenas at issue seek only the lease agreements and rental payments from the tenants of the Jackson Street building. The Court is unable to infer that this information

17

will result in a specific prejudice or harm against Plaintiffs. Although Plaintiffs claim that they are being retaliated against for the exercise of their First Amendment rights, the Court cannot issue a protective order on these speculative arguments. The Court also does not find that requesting the leases and rental payments of the tenants of the Jackson Street tenants would be harassing or oppressive to the tenants of the building.

Defendants claim that "Plaintiffs' reliance on the Fifth Amendment is misplaced," and assert that Plaintiffs cannot challenge the subpoenas issued to the third parties under the Fifth Amendment right against self-incrimination. [Doc. 41 at 6]. The Court does not believe that Plaintiffs are seeking a protective order on this basis, but nevertheless notes that Plaintiff Whiting's invocation of the Fifth Amendment does not constitute a basis for a protective order. *See, e.g.*, *Perrotte v. Johnson*, No. 1:15-CV-026-LJO-SAB(PC), 2019 WL 175284, at *5 (E.D. Cal. Jan. 11, 2019) ("Here, the subpoenas were issued to Plaintiff's employer; therefore, Plaintiff's privilege against self-incrimination is not implicated. The cases cited by Plaintiff are inapposite because they involve discovery directed at the party invoking the Fifth Amendment privileges, not a third party.").

Plaintiffs cite to *Elvis Presley Enters., Inc. v. City of Memphis, Tennessee*, No. 2:18-CV-02718-SHM-DKV, 2020 WL 4283279, at *4 (W.D. Tenn. Apr. 6, 2020), *aff'd*, 2020 WL 4015476 (W.D. Tenn. July 16, 2020) and *Waite, Schneider, Bayless & Chesley Co. L.P.A. v. Davis*, No. 1:11-CV-0851, 2013 WL 146362, at *5 (S.D. Ohio Jan. 14, 2013) as cases where protective orders were entered under similar circumstances. However, in *Elvis Presley* Enterprises, the Western District of Tennessee not only found that the City of Memphis had standing to challenge subpoenas issued to a nonparty on the basis of attorney-client privilege, but also that "the City had standing to seek a protective order because it had a potential interest in preventing disclosure" of privileged

documents. 2020 WL 4015476 at *14. In *Davis*, although the specific facts are not comparable, the Southern District of Ohio found that the defendant did not have standing to quash certain of the subpoenas at issue but detailed that "the documents requested [were] confidential pursuant to the protective order." 2013 WL 146362 at *5. Therefore, the *Davis* Court did not issue a protective order, but rather directed the subpoenas to the third parties to be supplemented with a copy of the protective order previously issued in the case.

Additionally, although Plaintiffs submitted the declaration of Plaintiff Whiting in which he stated that he did not intend to claim damages based upon any loss of personal income [Doc. 40-1], Plaintiffs have not established good cause for the issuance of a protective order prohibiting *any* inquiry into Plaintiff Whiting's personal income. While Plaintiffs subsequently claimed that Plaintiff Whiting merely managed the Jackson Street building, the Court finds that at least certain discovery into Plaintiff Whiting's personal income is relevant and Plaintiffs have failed to establish specific prejudice or harm resulting from the absence of a protective order. Discovery into the ownership interests of the buildings at issue is particularly relevant in light of the allegations of the Complaint detailed above. Further, the Court finds that discovery into Plaintiff Whiting's relationship with Plaintiff ARD Properties and the buildings at issue is relevant at this time. For example, Defendants correctly state that if Plaintiff Whiting "has no ownership interests in any of the real property at issue, he may lack standing to pursue the instant lawsuit individually" and "[i]f another entity or individual has an ownership interest in any of the buildings, he or she may be a necessary party to the lawsuit." [Doc. 41 at 5].

Here, the Court notes that Plaintiff Whiting previously invoked the Fifth Amendment and refused to answer deposition questions about his sources of income, tax returns, employment, and the composition and relationship with any trust at issue. Although Plaintiff Whiting may continue

19

to invoke the Fifth Amendment in response to future deposition questioning, if applicable, Plaintiffs have not established good cause for the issuance of a protective order prohibiting any inquiry into Plaintiff Whiting's personal income. "In order to properly invoke the privilege [under the Fifth Amendment], one must demonstrate real danger of incrimination." *Brennan v. C.I.R.*, 752 F.2d 187, 189 (6th Cir. 1984). This "danger" of incrimination may not be "a mere imaginary, remote or speculative possibility of prosecution." *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983). Therefore, Plaintiffs cannot prohibit inquiry into the financial background of Plaintiff Whiting based upon the speculative assertion that this information is sought to be turned over to a governmental agency.[4]

Ultimately, the Court finds that Plaintiffs do not have standing to move to quash the third-party subpoenas[5], as well as that Plaintiffs have not established good cause for the issuance of a protective order. Therefore, Plaintiffs' Motion for Protective Order and to Quash Defendants' Subpoenas [Doc. 33] will be **DENIED**.

Lastly, Defendants assert that Plaintiffs should be compelled to provide Plaintiff Whiting's tax returns, or alternatively, Plaintiff Whiting should be compelled to sign IRS Form 4506—authorizing the IRS to release to the Defendants copies of the Plaintiffs' federal income tax returns. [Doc. 41 at 10]. However, this issue was not raised in Defendants' previous motion to compel or argued before the Court. The Court finds that this request is improperly brought before the Court

---

[4] The Court instructs the parties to review the applicable case law regarding the Fifth Amendment privilege against self-incrimination in civil cases prior to its invocation in any future depositions or discovery responses.

[5] Because the Court has determined that Plaintiffs do not have standing to challenge the third-party subpoenas, the Court does not reach the Plaintiffs' arguments regarding insufficient time to comply with the subpoenas under Rule 45.

at this time in Defendants' post-hearing supplemental response, as Plaintiffs did not have the opportunity to respond to Defendants' request for the Court to compel Plaintiff Whiting's tax returns. Therefore, the Court declines to order Plaintiff Whiting to provide his tax returns at this time and directs the parties to re-confer on the issue in light of the Court's ruling on Plaintiffs' motion for a protective order.

## III.    CONCLUSION

Accordingly, for the reasons stated above, Defendants' Renewed Motion to Compel [Doc. 30] and Plaintiffs' Motion for Protective Order and to Quash Defendants' Subpoenas [Doc. 33] are **DENIED**.

**IT IS SO ORDERED.**

ENTER:

Debra C. Poplin
United States Magistrate Judge