UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

GLENN WHITING, and ARD PROPERTIES,    )
                                      )
            Plaintiffs,               )
                                      )
v.                                    )        No. 3:20-CV-54-TRM-DCP
                                      )
CHRIS TREW, et al.,                   )
                                      )
            Defendants.               )

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court are the following Motions: Andy Brusseau's Motion to Quash [Doc. 47], Plaintiffs' Motion and Memorandum in Support of Motion for Protective Order ("Motion for Protective Order") [Doc. 61], Defendants' Motion to Compel and Memorandum in Support ("Motion to Compel") [Doc. 65], and Plaintiffs' Motion and Memorandum in Support of Motion to Depose Additional Witnesses ("Motion to Depose") [Doc. 72]. The Motions are ripe for adjudication. Accordingly, for the reasons further explained below, the Court **GRANTS IN PART** Andy Brusseau's Motion to Quash [**Doc. 47**], **GRANTS IN PART** Plaintiffs' Motion for Protective Order, [**Doc. 61**], **DENIES IN PART** Defendants' Motion to Compel [**Doc. 65**], and **GRANTS IN PART** Plaintiffs' Motion to Depose [**Doc. 72**].

## I.    BACKGROUND

The Complaint [Doc. 1] in this case was filed on February 6, 2020, and later amended [Doc. 56] on January 11, 2021. The First Amended Complaint for Damages, Declaratory Relief, and Injunctive Relief ("Amended Complaint") names City of Athens ("City"), Chris Trew ("Trew"), and Seth Sumner ("Sumner") as Defendants. [Doc. 56]. Defendant Trew is the City

Attorney, and Defendant Sumner was the City Manager during the relevant times of the lawsuit. [*Id.* at ¶¶ 6-7]. In the Amended Complaint, Plaintiffs allege violations of the First Amendment to the United States Constitution. [*Id.* at 1]. The Amended Complaint seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 *et seq.*, and Tennessee Code Annotated §§ 29-14-10[1] *et seq.*, and specifically, requests that the Court declare Defendants' acts unconstitutional and enjoin them from continuing to take unconstitutional actions. [*Id.* at 56]. Finally, the Amended Complaint alleges violations of Plaintiffs' due process rights under the Fourteenth Amendment to the United States Constitution in relation a condemnation hearing held on August 30, 2019. [*Id.* at 21-23].

The Amended Complaint states that in 2014, Plaintiff Whiting's daughter obtained a judgment against a debtor. [*Id.* at ¶ 11]. The debtor refused to pay Plaintiff Whiting's daughter, so Plaintiff Whiting threatened, in a letter that was also sent to City employees, debtor that Plaintiff Whiting intended to paint a sign on the side of his building located at Jackson Street ("Jackson Street Building") regarding the details of the unpaid judgment. [*Id.*]. While Plaintiff Whiting was painting his first sign, Defendant Trew told Plaintiff Whiting, 'I can't let you do that. They are asking me to charge you with extortion." [*Id.* at ¶ 12]. The debtor eventually paid, and Plaintiff Whiting allowed City officials to paint over the sign. [*Id.* at ¶ 16].

The Amended Complaint states that years later, Plaintiff Whiting's car was stolen. [*Id.* at ¶ 17]. Plaintiff Whiting reported the car stolen, but the police department refused to investigate due to the animosity between Plaintiff Whiting and City officials. [*Id.*]. Plaintiff Whiting brought this matter to the Athens City Council ("Council") on several occasions, but no investigations were ever performed. [*Id.*]. Plaintiffs aver that Defendant Sumner and other officials displayed open hostility toward Plaintiff Whiting at Council meetings because of Plaintiff Whiting's allegations

regarding the failure to investigate. [*Id.* at ¶ 18]. The Athens Mayor ("Mayor") told Plaintiff Whiting that in order for the Council to address the failure to investigate, Plaintiff Whiting needed to file a petition so that the issue could be addressed during a work session. [*Id.* at ¶ 21]. Plaintiffs allege that other citizens were allowed to speak without notifying the Council of their intention to speak. [*Id.*]. Plaintiffs also allege that the City would not let a tenant improve the steps on the Jackson Street Building because it is owned by Plaintiff Whiting. [*Id.* at ¶ 26].

It is further alleged in the Amended Complaint that at one Council meeting, Plaintiff Whiting was told that he would no longer be allowed to discuss the failure to investigate his stolen vehicle. [*Id.* at ¶ 27]. Plaintiff Whiting threatened to paint another sign on a building. [*Id.*]. Defendant Sumner told Plaintiff Whiting that such actions "would be a mistake" and that Plaintiff Whiting could not win against City officials. [*Id.* at ¶ 28]. Plaintiffs state that Defendant Sumner's statement was a threat to take official government action in retaliation against Plaintiff Whiting. [*Id.*].

Plaintiffs allege that after a Council meeting in August 2019, the Mayor, along with several other members of the Council, stayed afterwards. [*Id.* at ¶ 29].[1] The Mayor called Plaintiff Whiting and asked him to return to chambers so that the Mayor and the Chief of Police could meet with Plaintiff Whiting. [*Id.*]. Plaintiff Whiting returned and saw all Council members (except Dr. Pelly), the Mayor, the City Manager, the Chief of Police, other city officials and employees, and the media. [*Id.*]. Plaintiff Whiting was told that if he wanted his stolen car investigated, he would have to help them in dealing with Dr. Pelly. [*Id.*]. In addition, Plaintiff Whiting was accused of

---

[1] In their filings, the parties refer to this meeting as the July 2019 meeting. In addition, the subpoena Plaintiffs served on Andy Brusseau seeks the audio recording of the July 2019 meeting. Thus, moving forward, the Court will follow suit.

conspiring with Dr. Pelly. [*Id.*]. Plaintiffs allege that this was an illegal meeting in violation of Tennessee's Sunshine Laws. [*Id.*].

The Amended Complaint states that the following week, Plaintiff Whiting informed City officials that he intended to paint another message on the side of the Jackson Street Building regarding the City's failure to investigate the theft of Plaintiff Whiting's car. [*Id.* at ¶ 30]. Later, a City Council member informed Plaintiff Whiting that if Plaintiff Whiting proceeded with painting the message, then the City would be taking actions against Plaintiff Whiting. [*Id.* at ¶ 31]. Defendant Sumner told Plaintiff Whiting, "You don't want to fight me. You cannot win." [*Id.* at ¶ 32]. Plaintiffs allege that, thereafter, Defendant Sumner ordered the Athens Building Inspector ("Building Inspector") to issue a citation against Plaintiff Whiting and halt construction on roof improvements to an awning that had been installed on the Jackson Street Building over ten (10) years earlier. [*Id.* at ¶ 33]. Plaintiffs allege that Defendant Sumner ordered the Building Inspector to issue a citation halting the improvements, even though other buildings have similar awnings. [*Id.*]. The Building Inspector declined. [*Id*].

The Amended Complaint alleges that on August 30, 2019, Defendants held a hearing ("August 30 Hearing") regarding the demolition of the Pope Avenue Building. [*Id.* at ¶ 34]. Plaintiffs aver that the City notified Plaintiff's father-in-law, Don Ammerman ("Ammerman"). [*Id.* at ¶ 36]. Ammerman requested additional time to sell the Pope Avenue Building, and Defendant Trew intentionally gave Ammerman the false impression that no one needed to attend the August 30 Hearing. [*Id.*]. No one on behalf of Plaintiff ARD Properties attended the meeting. [*Id.*]. Plaintiffs state that Defendants are aware that the Pope Avenue Building is owned by Plaintiff ARD Properties, which is a trust controlled by Plaintiff Whiting's family. [*Id.* at ¶ 34]. In addition, Plaintiffs allege that Defendants knew that Plaintiff Whiting was the primary manager

of the Pope Avenue Building. [*Id.*]. The Amended Complaint alleges that Plaintiffs were not properly noticed to the August 30 Hearing until after it was held, despite their ownership interests in the Pope Avenue Building. [*Id.*]. On September 25, 2019, Defendant Sumner signed an order ("September 25 Order") requiring Plaintiff ARD Properties to demolish the Pope Avenue Building on or before December 1, 2019. [*Id.*].

The Amended Complaint provides that after the August 30 Hearing, but before the September 25 Order, Defendant Sumner called Plaintiff Whiting and invited him to meet with Defendants Sumner and Trew about the message that Plaintiff Whiting intended to paint on the Jackson Street Building. [*Id.* at ¶ 38]. Defendant Sumner failed to attend the meeting, but Defendant Trew attended and informed Plaintiff Whiting about other variables Plaintiff Whiting had not considered with respect to his intention to paint the Jackson Street Building, such as violating the terms of a federal grant. [*Id.*]. Plaintiff Whiting informed Defendant Trew that he intended to paint the sign on the Jackson Street Building, and Defendant Sumner later signed the September 25 Order. [*Id.*].

Subsequently, Plaintiff Whiting informed the Building Inspector that he (Plaintiff Whiting) was willing to make the repairs required for the Pope Avenue Building. [*Id.* at ¶ 39]. The Amended Complaint states, "Because the City of Athens has threatened to demolish the Pope Avenue [B]uilding, Whiting is unable to perform any maintenance or repairs until this lawsuit is completed, for fear that any such efforts and resources would be wasted if the City demolishes the building. Therefore, all deterioration of the Pope Avenue [B]uilding caused by an inability to repair or maintain said building during the pendency of this lawsuit, are damages caused by [D]efendants." [*Id.* at ¶ 45].

Plaintiffs state that since filing the lawsuit, they learned that Defendant Sumner was the presiding judge at the August 30 Hearing and that he was also the complaining party. [*Id.* at ¶¶ 47-48]. Plaintiffs state that the only witness at the August 30 Hearing was a City employee, Matthew Gravely, who testified about the condition, valuation, and cost to repair the Pope Avenue Building, despite having no qualifications to testify to such opinions. [*Id.* at ¶ 50].

With respect to the foregoing, Plaintiffs allege First and Fourteenth Amendment violations and depravation of due process, and they seek declaratory and injunctive relief pursuant to Tennessee Code Annotated §§ 29-14-10[1] *et seq.,* and 28 U.S.C. §§ 2201 *et seq.*

## II. POSITIONS OF THE PARTIES

The Court will summarize the parties' positions in the Motions in the order in which they were filed, unless otherwise noted.

### A. Andy Brusseau's Motion to Quash Subpoena

Andy Brusseau ("Movant") moves [Doc. 47] to quash a subpoena compelling his deposition testimony and production of "[a]ll recordings, videos, notes, and other records of the unofficial meeting held in Council chambers immediately after the July 2019 meeting of the Athens City Council." *See* [Doc. 47-2]. For grounds, Movant states that he is an employee of the Daily Post Athenian, a newspaper of general circulation published in McMinn County, Tennessee, and portions of North Carolina, and that pursuant to Federal Rule of Evidence 501 and the Court's decision in *Matthews v. Town of Greeneville*, No. CV-2-88-468 (E.D. Tenn. Apr. 29, 1991), he enjoys a privilege against compelling his testimony. Movant argues that Plaintiffs have not established their burden in showing that their interests are more compelling than Movant's privilege. In addition, Movant also argues that state law prohibits disclosure pursuant to Tennessee Code Annotated § 24-1-208.

Plaintiffs respond [Doc. 52] that in order to compel disclosure in Tennessee, they must show the following by clear and convincing evidence: (1) there is probable cause to believe that the information sought is clearly relevant to the specific violation of law, (2) the information sought cannot be obtained by alternative means, and (3) the party seeking the disclosures has demonstrated a compelling and overriding public interest in revealing the information. Plaintiffs argue that Movant has the only recording of an illegal meeting held by Athens' City Council members. Plaintiffs state that the requested information goes to the heart of this case—that is, the content of the sign that Plaintiffs painted. Further, Plaintiffs state that they have exhausted all other means of obtaining the information. Finally, Plaintiffs argue that there is no harm to any confidential source.

In addressing the state factors, Plaintiffs state that Movant has information clearly relevant to a specific violation, the information sought cannot be obtained by any other means, and that the information involves public interest. Plaintiffs request that the Court deny Movant's Motion.

Movant replies [Doc. 57] that Plaintiffs have not met their burden in showing that the production of Movant's testimony and recording are warranted. Movant asserts that Plaintiffs have not met their burden in showing probable cause to believe that Movant has information clearly relevant to a specific, probable violation of law. Further, Movant states that Plaintiffs have not established that they exhausted all other means in obtaining the information. Finally, Movant submits that Plaintiffs have not shown a compelling public interest in any of the disputed information referenced in this litigation.

### B.    Plaintiffs' Motion for Protective Order

The primary subject of Plaintiffs' Motion for Protective Order [Doc. 61] concerns Plaintiffs' income and tax returns. Plaintiffs argue that such information is irrelevant in this case.

Plaintiffs explain that several months ago, they amended their Complaint, eliminating references to allegations of damages based on lost rents from any building and that they have also filed declarations explicitly disclaiming any damages arising from lost rents from any building. Plaintiffs contend that despite removing such references, Defendants continue to demand Plaintiffs' income and banking information. Plaintiffs state that they sent Defendants multiple versions of proposed protective orders that would have allowed Defendants to obtain all the information they sought, with the understanding that said information could only be used for purposes of this lawsuit, but Defendants refused to agree to Plaintiffs' proposed orders. Plaintiffs argue that the sole purpose of Defendants' requests is to harass and intimidate them. Plaintiffs request that the Court enter their protective order, which forbids disclosure, discovery, or inquiry into Plaintiffs' income without further order of the Court.

Defendants object [Doc. 66] and move to compel [Doc. 65] Plaintiffs to fully and completely respond to Interrogatories and Request to Produce Documents. In addition, Defendants request that the Court order Plaintiffs to respond to certain questions asked during their depositions. For grounds, Defendants state that in their Amended Complaint, Plaintiffs assert a claim arising under 42 U.S.C. § 1983 for deprivation of due process. Defendants argue that Plaintiffs have alleged that Defendants violated their right to property by failing to notify Plaintiff Whiting of the August 30 Hearing. Defendants argue that Plaintiffs' proposed protective order does more than protect the dissemination of information related to Plaintiffs' income and that it precludes any discovery of income.

Defendants maintain that Plaintiffs' financial information is relevant. First, Defendants argue that Plaintiffs allege, as part of damages, that they were not able to perform any maintenance or repairs on the Pope Avenue Building due to Defendants' actions. Defendants submit that

Plaintiffs are seeking as damages "all deterioration of the Pope Avenue [B]uilding." Defendants assert that they are entitled to challenge whether Plaintiffs were financially able to repair and/or maintain the Pope Avenue Building. Defendants state that Plaintiffs have failed to allege specific facts showing a clearly defined and serious injury resulting from the discovery of their income. Defendants anticipate that Plaintiffs' income may become a portion of the records relied upon by the Court at the dispositive motion stage or ultimately at trial.

Plaintiffs reply [Doc. 77] that Defendants' stated reason for seeking financial information (i.e., to determine if Plaintiffs were financially able to repair and/or maintain the Pope Avenue Building) is new. Plaintiffs argue that because of the likelihood of intimidation and harassment, courts have found a qualified privilege regarding the discovery of tax returns. Plaintiffs explain that in order to compel disclosure of tax returns, a party must show that the information is relevant and that the information cannot be sought from other sources. Plaintiffs state that they have other evidence that shows that they had access to sufficient funds to make temporary repairs to the roof of the Pope Avenue Building. Further, Plaintiffs state that Defendants have refused to accept an agreed order restricting the use of income records and that Defendants' recently changed assertions of relevancy demonstrate their illicit motives. In addition, Plaintiffs state that they also have evidence that a named Defendant is intimidating witnesses.[2] Plaintiffs argue that Defendants intend to use the tax, banking, and income information to cause the Internal Revenue Service to audit Plaintiffs and possibly pursue criminal tax evasion charges. Plaintiffs assert that they have articulated specific facts showing a clearly defined and serious injury if the Court orders the production of such information.

---

[2] Plaintiffs have moved for sanctions based on witness intimidation. [Doc. 94].

## C. Defendants' Motion to Compel

Defendants move [Doc. 65] the Court to compel Plaintiffs to fully and completely respond to Interrogatories and Request to Produce Documents. In addition, Defendants request that the Court order Plaintiffs to respond to certain questions asked during Plaintiffs' depositions. Defendants state that they are primarily seeking information that speaks to Plaintiffs' damages and information regarding Plaintiff ARD Properties and Plaintiffs' relationships with each other. Defendants also seek production of Plaintiff Whiting's Facebook account and an order compelling Plaintiffs to comply with Federal Rule of Civil Procedure 33(b) by executing an oath in response to Defendants' Second set of Discovery Requests. Finally, Defendants seek attorney's fees and costs incurred with respect to the instant Motion.

For grounds, Defendants assert that Plaintiffs' business relationships, income, and tax returns are relevant and discoverable because Plaintiffs seek compensatory damages based on the inability to make repairs to the Pope Avenue Building. Defendants argue that they are entitled to challenge Plaintiffs' allegations by obtaining evidence that Plaintiffs were not financially able to make any repairs to the Pope Avenue Building. Defendants argue that Plaintiffs have also put at issue the relationship between one another by claiming the Jackson Street Building is "his" (Plaintiff Whiting's) building. Defendants state that Plaintiffs' newest cause of action, a procedural due process claim, raises the issue of who has an ownership interest in the Pope Avenue Building. Defendants further assert Plaintiffs' tax returns are relevant and that Plaintiff Whiting's invocation of his Fifth Amendment rights during his deposition does not permit Plaintiffs from withholding relevant evidence.

In response, Plaintiffs incorporate [Doc. 78] their Motion for Protective Order [Doc. 61] and their Reply [Doc. 77] in support of their Motion for Protective Order. Further, Plaintiffs have

agreed to provide the following items: (1) Plaintiff Whiting's Facebook account, (2) documentation showing Plaintiff ARD Properties' ownership interest in any real property and/or documents or evidence supporting a rental, rental agreement, management agreement, etc., and (3) Plaintiffs' oath in response to Defendants' Second Set of Discovery Requests.

With respect to Defendants' inquiry regarding the ownership of the Jackson Street Building, Plaintiffs argue that the ownership is irrelevant. Plaintiffs argue that Defendants' request for attorney's fees should be denied. With respect to the ownership of the Pope Avenue Building, Plaintiffs state that Plaintiff ARD Properties owns it and that Plaintiff ARD Properties is a trust controlled by the Whiting and Ammerman families. Plaintiffs state that Connie Ammerman is the trustee for ARD Properties and that Defendants already have documents reflecting such. They further state that Plaintiff Whiting is a beneficiary of the ARD Properties trust and that Plaintiffs will provide evidence supporting this fact. Plaintiffs acknowledge that legal entities may not assert their right against self-incrimination. Finally, Plaintiffs argue that Defendants' request for attorney's fees should be denied.

### D. Plaintiffs' Motion and Memorandum in Support of Motion to Depose Additional Witnesses

Plaintiffs move [Doc. 72] pursuant to Rule 30(a)(2) and the Court's Local Rules to permit them to depose seven (7) additional witnesses. Plaintiffs later state that seven (7) of the nine (9) additional depositions requested are employees of the City and that Plaintiffs cannot communicate with them outside the presence of defense counsel.[3] Plaintiffs argue that the Federal Rules of Civil Procedure are intended to protect typical litigants from unduly burdensome costs associated with litigation and that the City can easily bear minor additional costs associated with the requested

---

[3] The Court notes that Plaintiffs request nine additional depositions, but Defendants have agreed to one deposition (Leslie Sellers) and the other requested deposition is of Andy Brusseau, who Plaintiffs subpoenaed in December 2020.

depositions. Plaintiffs state that without the depositions, they will be forced to pursue their lawsuit without having deposed Defendants' expert witness, three of the five Athens City Council policy makers, and a witness who was present at the meetings where the matters alleged were discussed. Plaintiffs claim that the benefits of the additional depositions outweigh the burden and expense, which are minimal.

Andy Brusseau filed a Response [Doc. 73], noting his objection to being deposed. In addition, Defendants agree to allow Plaintiffs to depose their expert, Leslie Sellers [Doc. 75], but they request that the Court deny the remaining depositions. Defendants argue that the individuals Plaintiffs seek to depose do not have relevant knowledge of Plaintiffs' cause of actions. Defendants submit that the factors outlined in Rule 26(b)(1) weigh in favor of denying Plaintiffs' request.

Plaintiffs filed a Reply [Doc. 79], maintaining that all witnesses who were present during the weekly department heads meeting should be deposed given the differing accounts of what occurred, and they have knowledge regarding Defendant Sumner's animus against Plaintiff Whiting. Plaintiffs argue that Defendant Sumner used his governmental authority as City Manager to intimidate a witness in this lawsuit. Plaintiffs state that they have deposed witnesses regarding the July 2019 meeting and that those witnesses have offered different accounts of what transpired during that meeting. Plaintiffs maintain that the requested depositions are relevant to the instant lawsuit.

## III.    ANALYSIS

Accordingly, for the reasons further explained below, the Court **GRANTS IN PART** Andy Brusseau's Motion to Quash [**Doc. 47**], **GRANTS IN PART** Plaintiffs' Motion for Protective

Order, [**Doc. 61**], **DENIES IN PART** Defendants' Motion to Compel [**Doc. 65**], and **GRANTS IN PART** Plaintiffs' Motion to Depose [**Doc. 72**].

The Court will address the Motions in the order in which they were filed, unless otherwise noted.

### A.      Andy Brusseau's Motion to Quash Subpoena

Movant requests that the subpoena commanding his testimony and "all recordings, videos, notes, and other records of the unoffical meeting held immediately after the July 2019 meeting of the Athens City Council" be quashed.  In support of his request, Movant relies on the news reporter privilege, while Plaintiffs argue that they have overcome the qualified privilege.

As an initial matter, in submitting their respective positions, Movant and Plaintiffs both rely on state and federal law in arguing whether the news reporter privilege applies under the instant circumstances.  The Court, however, finds that only federal common law applies.

The Court will begin with Federal Rule of Evidence 501, which states as follows:

> The common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege unless any of the following provides otherwise:
>
> • the United States Constitution;
> • a federal statute; or
> • rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501.  Thus, pursuant to Rule 501, "[Q]uestions of privilege are generally controlled by federal common law when the court's jurisdiction is based upon a federal question, but state law generally controls when the court is exercising diversity jurisdiction." *L.W. v. Knox Cnty Bd. of Education*, No. 3:05-cv-274, 2008 WL 820007 (E.D. Tenn. Mar. 25, 2008).  In a case like the instant one, where Plaintiffs allege federal and state claims, the Sixth Circuit has held that federal

common law controls under Rule 501.  *Hancock v. Dodson*, 958 F.2d 1367, 1372-73 (6th Cir. 1992).

Specifically, in *Hancock*, the Sixth Circuit addressed whether the physician-patient privilege was applicable.  *Id.* at 1372.  Before addressing the merits, the Court questioned whether state law or federal common law applied, despite the parties both applying Michigan law of privilege.  *Id.*  The Court held that "in federal question cases where pendent state claims are raised the federal common law of privileges should govern all claims of privilege raised in the litigation." *Id.* at 1373 (quoting *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 458 (N.D. Cal. 1978)). The Court reasoned that such an approach is "most consistent with the congressional policy that 'in nondiversity jurisdiction civil cases, federal privilege law will generally apply.'"  *Id.* (quoting *Perrignon*, 77 F.R.D. at 459) (other citations omitted).  The Court concluded, "Since the instant case is a federal question case by virtue of the appellant's section 1983 claim, we hold that the existence of pendent state law claims does not relieve us of our obligation to apply the federal law of privilege."  *Id.*

Similarly, in determining whether the news reporter privilege applied in a case involving state and federal claims, the Eastern District of Tennessee held that federal law applied.  *Whitson,* 2008 WL 820007, at *1.  Relying on *Hancock*, the court held, "Given the federal claims raised by the plaintiffs, the [c]ourt accordingly finds that the instant motion must be resolved under federal, not state, law."  *Id.*

Likewise, in *Babcock Power, Inc., v. Kapsalis*, the court held that when a plaintiff alleges federal and state law claims, federal common law applies to privileges.  No. 3:13-CV-717-CRS, 2016 WL 5478006, at *1 (W.D. Ky. Sept. 27, 2016).  In reaching its decision, the court relied on

*Hancock* and the Senate Report reproduced, in part, in the Advisory Committee Notes to the 1974

Enactment of Rule 501, which provide as follows:

> The formulation of the rule on privilege adopted by the House is pregnant with litigious mischief. The committee has, therefore, adopted what we believe will be a clearer and more practical guideline for determining when courts should respect State rules of privilege. Basically, it provides that in criminal and Federal question civil cases, federally evolved rules on privilege should apply since it is Federal policy which is being enforced. It is also intended that the Federal law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case.

*Id.* at *1-2 (other citations omitted) (brackets omitted).

In the instant matter, Plaintiffs allege violations of the First and Fourteenth Amendments

of the United States Constitution.  In addition, Plaintiffs request declaratory and injunctive relief

pursuant to federal and state law.  Accordingly, while the parties brief Tennessee law with respect

to the news reporter privilege, given the above authority, the Court finds that federal law applies

and not state law.

The next issue that the Court must address is whether federal law recognizes the news

reporter privilege.  Movant and Plaintiffs appear to agree that federal law recognizes such a

privilege.  In support of his position, Movant relies on *Matthews v. Town of Greeneville*, No. CIV-

2-88-468 (E.D. Tenn. Apr. 29, 1991), which he attaches to his filings as [Doc. 48-1].[4]  In *Matthews*,

the plaintiff alleged violations of 42 U.S.C. § 1983 after he was terminated from the Greeneville

Light and Power System for allegedly reporting accounting distortions to The Greeneville Sun.

[Doc. 48-1 at 1-3].  The defendants issued subpoenas to two reporters at The Greeneville Sun,

compelling the reporters' deposition testimony and all materials relating to the employer's

---

[4] The Court will cite to *Matthews* using the CM/ECF ledger.

accounting practices, management, and operations. [*Id.* at 3]. The reporters moved to quash the subpoenas, invoking the news reporter privilege. [*Id.*].

The court recognized the news reporter privilege, reasoning that "reason and experience dictate such a result." [*Id.* at 14]. The court also noted, "Both the legislative history of Rule 501 and the present, pervasive existence of state 'shield laws' lend credence to this conclusion." [*Id.*]. The court found, however, that the privilege is not absolute. [*Id.*]. Ultimately, the court held that the privilege did not apply to shield the reporters from complying with the subpoenas. [*Id.* at 15]. The court explained that the case did not involve a confidential source and that the information requested could not be discovered through sources other than the reporters and The Greeneville Sun. [*Id.* at 14]. Further, the court reasoned that while the reporters were not parties, they were key witnesses in the litigation because the lawsuit stemmed from plaintiff's statements to the newspaper. [*Id.* at 15]. The court noted that plaintiff's statements and the documents that he provided to the reporters were "pivotal to the suit." [*Id.*]. Accordingly, the court held that the qualified news reporter privilege was outweighed by the competing interests in the case. [*Id.*].

In 2008, however, this court held, "The Sixth Circuit has clearly recognized that reporters do not possess a special privilege against being compelled to testify." *Whitson*, 2008 WL 820007, at *1 (citing *In re Grand Jury Proceedings*, 810 F.2d 584-85 (6th Cir. 1987)).[5] The court continued, "Rather, the Court must apply the balancing test established by Rule 26." *Id.* (citing *In re DaimlerChrysler AG Securities Litigation*, 216 F.R.D. 395 (E.D. Mich. 2003)) (finding that the Sixth Circuit does not recognize a general reportorial privilege but quashing a deposition subpoena of a reporter under Rule 26 as unduly burdensome).

---

[5] The Sixth Circuit in *In re Grand Jury Proceedings* held that the news reporter privilege did not exist in the context of a subpoena requesting the reporter's testimony in grand jury proceedings. 810 F.2d at 586.

Similarly, in *Johnson v. Metropolitan Gov. of Nashville and Davidson County*, the Middle District of Tennessee ruled, "[T]he Sixth Circuit has not recognized a general 'news reporter privilege' in civil cases." No. 3:07-0979, 2009 WL 1952780, at *5 (M.D. Tenn. July 2, 2009). In *Johnson*, plaintiffs alleged that they were wrongfully denied promotions based on their race. *Id.* at *1. The plaintiffs served a reporter with a subpoena commanding his deposition testimony with respect to an article he authored that quoted the plaintiffs' employer's representative who made statements about the promotions policy. *Id.* at *4. The plaintiffs deposed the representative who made the statement, but the plaintiffs claimed that they needed more information from the reporter who received the representative's statement. *Id.* at *5.

The court did not recognize the privilege but noted that the Sixth Circuit had instructed courts to "make certain that the proper balance is struck between freedom of the press and the obligations of the all citizens to give relevant testimony." *Id.* (quoting *In Re Grand Jury Proceedings*, 810 F.2d at 586). Stated in a different way, the court explained, "[C]ourts must ensure that proper deference is given to the unique role played by journalists in our society and also must ensure that private parties are not allowed to turn non-party journalists and newspapers into 'private discovery agents.'" *Id.* (quoting *In re DaimlerChrysler AG Securities Litigation*, 216 F.R.D. at 406). The court explained that when a protective order is sought, courts should apply the factors articulated in Rule 26(c). *Id.* In addition, the court applied the factors identified in Rule 26(b)(2)(C) and found that they weighed against plaintiffs' subpoena. *Id.*

The Court finds that the factors articulated in Rule 26(b)(2)(C) are helpful to the instant issue. Specifically, Rule 26(b)(2)(C) provides as follows:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

**(i)** the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

**(ii)** the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

**(iii)** the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).  After balancing the above factors, the Court finds that Movant's request is not well taken in part.

First, the Court notes that Plaintiffs seek discovery of information relating to a discussion between Plaintiff Whiting and certain City officials during a meeting in Council chambers that was recorded by Movant.  According to the Amended Complaint, this meeting appears to have occurred immediately after an official City Council meeting where Plaintiff Whiting alleges he was told that "he [Whiting] would no longer be allowed to discuss at Council meetings the City's failure to investigate the theft of Whiting's car."  [Doc. 56 at ¶ 27].  This meeting in Council chambers included Defendant Sumner.  [*Id.* at ¶ 29].  The heart of Plaintiffs' claims is that Defendants have taken official actions against Plaintiffs in retaliation for Plaintiff Whiting's expression of political views at public meetings and for expressing views via display on the Jackson Street Building.  [*Id.* at ¶ 9].  Thus, the lawsuit stems from Plaintiff Whiting's alleged exercise of First Amendment freedoms, and therefore, relevant discovery would include instances of Plaintiff Whiting engaging in protected activity by expressing his displeasure with the investigation into the stolen vehicle at meetings with city officials and through his message on the Jackson Street Building as well as any purported retaliatory action taken as a result.[6]

---

[6] The Amended Complaint adds that during the July 2019 meeting, Plaintiff "Whiting was told that if he wants his stolen car investigated, he would have to help them in dealing with Dr. Pelly."  [Doc. 56 at ¶ 29].  The Amended Complaint further alleges that Plaintiff Whiting was accused of conspiring with Dr. Pelly.  [*Id.*].

In their brief, Plaintiffs state that the meeting in Council chambers was to discuss Plaintiff Whiting and the facts at issue in the instant lawsuit, which goes to the heart of the City's liability. Specifically, Plaintiffs maintain that the participants of the meeting discussed the content of the sign. Undoubtedly, this would be relevant information, or at the very least, likely to lead to the discovery of relevant information.[7] There is nothing before the Court to contradict Plaintiffs' assertion that the recording contains relevant information. Movant argues that Plaintiffs have not met their burden to show probable cause to believe that Movant has information clearly relevant to a specific, probable violation of law, but that is not the standard. The Court must only consider whether the proposed discovery is within the scope permitted by Rule 26(b)(1), and the Court finds the discussions at the July 2019 meeting relevant.

Next, the Court examines whether Plaintiffs, who are seeking the discovery, have had ample opportunity to obtain the information regarding the meeting. Plaintiffs acknowledge that they have obtained some discovery regarding the meeting through depositions. Specifically, they note that John Coker testified that the meeting was to discuss the best route Plaintiff Whiting could take to resolve the situation regarding the investigation into Plaintiff Whiting's stolen car. [Doc. 52-2 at 2]. Although it does not appear that he attended the meeting, Defendant Trew testified that he was aware that the meeting occurred and that the participants discussed the handling of the stolen car incident. [Doc. 52-3]. Dr. Pelly did not attend the meeting but apparently heard a portion of Movant's recording. [Doc. 52-4 at 3]. Dr. Pelly testified that during the July 2019 meeting, the

---

[7] The Court, however, finds it curious that Plaintiff Whiting attended the July 2019 meeting and presumably knows the entire contents of the meeting, but in support of Plaintiffs' argument, Plaintiff Whiting only offers the following statement about the meeting: "The primary purpose of that meeting was to discuss allegations of collusion between myself and council member Pelly." [Doc. 52-1 at ¶ 3].

participants talked about Dr. Pelly in a disparaging way and that they also discussed the police department's investigation of Plaintiff Whiting's stolen car. [*Id.*]. Dr. Pelly said that John Coker also accused Plaintiff Whiting of conspiring with Dr. Pelly. [*Id.*].[8]

While the alleged failure of the police to investigate Plaintiff Whiting's stolen car is not at issue in this case, Plaintiff Whiting's engagement in protected activity by expressing his displeasure with the investigation is a central issue along with any purported retaliatory action resulting from such activity and any due process violations. As previously detailed, the Amended Complaint states that this meeting, which took place in Council chambers, occurred immediately after an official City Council meeting where Plaintiff Whiting had voiced his displeasure about the lack of investigation of his stolen vehicle and had been told that he would no longer be allowed to discuss the topic at Council meetings. Plaintiff Whiting also asserts that he discussed the painting of the sign at the official Council meeting and that the sign was further discussed during the meeting in Council chambers.

While it appears that Plaintiff Whiting himself has personal knowledge of the meeting and that Plaintiffs have made some efforts to discover information about the meeting through taking depositions in the case, the scope and details of the discussions between Plaintiff Whiting and City officials during this meeting are not clear. Given the passage of time and number of people involved, ascertaining the details of the meeting would likely require additional depositions, which

---

[8] In Plaintiffs' Response, Plaintiffs attempt to emphasize the contrary testimony about what occurred at the July 2019 meeting. As explained above, however, the deponents who testified about the July 2019 stated that the participants of the July 2019 meeting discussed the alleged failure of the police to investigate Plaintiff Whiting's stolen car (how Plaintiffs phrase the issue in their Response, "the content of the sign"). In Plaintiffs' Response, they acknowledge that the "content of the sign" was discussed at the July 2019 meeting, *see* [Doc. 52 at 3], but interestingly, the *only* person who does not mention the police investigation as a topic at the July 2019 meeting is Plaintiff Whiting, who states that the "primary purpose of that meeting was to discuss allegations of collusion between myself and Council member Pelly." [Doc. 51-2 at ¶ 3].

leads to the Court's consideration of the last factor to be weighed—whether other sources of the information are more convenient, less burdensome, or less expensive.

In evaluating the last factor articulated in Rule 26(b)(2)(C), the Court turns to whether the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source. Here, the Court finds that the audio recording is not unreasonably cumulative or duplicative because it is the best evidence of what specific conversations took place at the July 2019 meeting. *See Matthews,* No. CIV-2-88-468 [Doc. 48-1 at 9] (requiring the reporters to produce copies of any video and/or audio recordings of their interviews with several witnesses recognizing "these interviews are not available through other sources" given the passage time) (citing *Hamilton v. Canal Barge Co.*, 395 F. Supp. 975, 977 (E.D. La. 1974)) (discussing rapid decrease in memory over time). The only other source of this discovery is depositions, which the Court finds are less convenient, more burdensome, and more expensive.

Accordingly, for reasons explained above, the Court finds that the news reporter privilege does not exist to protect Movant from the discovery sought. Further, the Court has weighed the relevant factors pursuant to Rule 26(b)(2)(C)(i)-(iii), and the Court finds that they weigh in favor of Movant producing the audio recording.[9] Given that the Court has ordered the production of the audio recording, however, the undersigned finds Movant's deposition testimony and production of notes and other records unreasonably cumulative and duplicative. Fed. R. Civ. P. 26(b)(2)(C)(i). Accordingly, Movant's Motion to Quash [**Doc. 47**] is **GRANTED IN PART AND DENIED IN PART**. Movant **SHALL** produce to Plaintiffs the audio recording of the July 2019 meeting within

---

[9] In rendering the above decision, the Court has also considered the Middle District of Tennessee's instruction to "ensure that proper deference is given to the unique role played by journalists in our society." *Johnson*, 2009 WL 1952780, at *5. Here, the Court notes that Movant has already voluntarily shared his audio recording with another person—Dr. Pelly. Thus, the Court is not so concerned with burdening Movant's ability to investigate and write stories relating to the July 2019 meeting.

fourteen (14) days of the instant Memorandum and Order, but the Court will **QUASH** the subpoena with respect to Movant's deposition, notes, and other records.

### B. Plaintiffs' Motion for Protective Order and Defendants' Motion to Compel

The Court will address these Motions contemporaneously given that they raise the same issues. As mentioned above, Defendants seek the following: (1) Plaintiff Whiting's income information, including sources of income, employment earnings, business earnings, income received from any trust, rental income, etc. (Interrogatory No. 1 to Defendants' Second Set of Interrogatories to Plaintiff Whiting); (2) Plaintiffs' tax returns from 2010 to 2020 or execution of IRS Form 4506; (3) Plaintiff Whiting's Facebook Account (Request for Production No. 4); (4) documents or evidence supporting an ownership interest in any real property and/or documents or evidence supporting a rental, rental agreement, management agreement, etc. (Interrogatory No. 11 to Defendants' First Set of Discovery to the Plaintiffs); (5) compliance with Rule 33(b)—that is, executing an oath in response to Defendants' Second Set of Discovery Responses; (6) Plaintiff ARD Properties' financial information (Defendants' Third Set of Discovery Requests); and (7) resuming Plaintiff Whiting's deposition to answer the questions regarding his income, tax returns, ownership, and trustee information for Plaintiff ARD Properties.

Plaintiffs have agreed to produce items 3-5 above as follows: (i) Plaintiff Whiting's Facebook account, (ii) documentation showing ARD Properties' ownership interest in any real property and/or documents or evidence supporting a rental, rental agreement, management agreement, etc., and (iii) an oath executed by Plaintiffs for their responses to Defendants' Second Set of Discovery Requests. Thus, the remaining issues involve Defendants' discovery requests regarding Plaintiffs' financial information, including tax returns, in the form of interrogatories,

request to produce, and Plaintiff Whiting's deposition.  Specifically, the following interrogatories

and request to produce are still in dispute:

> Interrogatory No. 1 to Plaintiff Whiting: Identify all sources of income for the Plaintiff and city businesses or entities claimed or contracted by the Plaintiff, including but not limited to, employment earnings, business earnings, income received from any trust or related-entity, rental income, etc.  For each source of income, state the amount in earnings the Plaintiff has received for the past five (5) years.
>
> Request No. 2 to Plaintiff Whiting: Produce copies of all tax returns for Mr. Whiting for the years 2010 through 2020.
>
> Request No. 3 to Plaintiff Whiting: Produce copies of all tax returns of the years 2010 through 2020 for any entity owned in full or in part by Mr. Whiting.
>
> Request No. 2 to Plaintiff ARD Properties: Produce copies of all tax returns and/or tax-related documents for ARD Properties for the years 2010 through 2020.
>
> Defendants' Third Set of Interrogatories and Requests for Production of Documents Propounded to Plaintiff ARD Properties (seeking identification of financial institutions and related details and identification and information of individuals having financial authority, *see* [Doc. 65-11]).

The Court will begin with Federal Rule of Civil Procedure 26, which governs discovery.

Rule 26(b)(1) provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Courts have explained that the "scope of discovery under the Federal Rules of Civil

Procedure is traditionally quite broad." *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D.

240, 242 (N.D. Ohio 2017) (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). Courts have cautioned, however, that "[d]iscovery requests are not limitless, and parties must be prohibited from taking 'fishing expeditions' in hopes of developing meritorious claims." *Bentley v. Paul B. Hall Reg'l Med. Ctr.*, No. 7:15-CV-97-ART-EBA, 2016 WL 7976040, at *1 (E.D. Ky. Apr. 14, 2016). "[T]he [C]ourt retains the final discretion to determine whether a discovery request is broad or oppressive." *Id.* (citing *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).

In addition, under Rule 26(c)(1), a district court may grant a protective order preventing the production of discovery to protect a party or entity from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The moving party must show good cause for protection from the harms identified above. Fed. R. Civ. P. 26(c)(1). "Good cause exists if specific prejudice or harm will result from the absence of a protective order." *In re Ohio Execution Protocol Litig.,* 845 F.3d 231, 236 (6th Cir. 2016). With respect to tax returns, "some courts have applied a two-part test to determine whether the discovery of tax returns is permissible." *Shelbyville Hosp. Corp. v. Mosley*, No. 4:13-CV-88, 2017 WL 1155046, at *4 (E.D. Tenn. Mar. 27, 2017). "Under this test, a party seeking tax returns has to show that they (1) are relevant, and (2) contain information that is not obtainable from other sources." *Id.* While this Court has not adopted this test, "it must at least be mindful of the emphasis that its sister courts place on the public-policy concerns that have unquestionably contributed to this test's emergence." *Id.*

With the above guidance in mind, the Court will turn to the instant discovery dispute.[10] Defendants maintain that Plaintiffs have put their income at issue in this case, explaining that

---

[10] The Court notes that it addressed a similar discovery dispute in November 2020. Specifically, Defendants issued subpoenas to the tenants of the Jackson Street Building requesting

Plaintiffs are seeking compensatory damages based on the inability to make repairs to the Pope Avenue Building. Defendants argue that they are entitled to challenge Plaintiffs' allegations and determine if Plaintiffs were financially able to repair and/or maintain the Pope Avenue Building. Thus, Defendants argue that Plaintiffs' ability or inability to undertake repairs and/or maintenance on the Pope Avenue Building is certainly at issue, citing to paragraph forty-five (45) of the Amended Complaint. Defendants also assert, "At a minimum, the Defendants should be entitled to gather information during the discovery process to refute Plaintiffs' claims that they have been damaged monetarily by the Defendants. Plaintiffs' income, and any change in their income, is therefore relevant." [Doc. 66 at 5].

Furthermore, Defendants argue that Plaintiffs' tax returns are relevant because Plaintiff Whiting makes numerous allegations about his business relationship with Plaintiff ARD Properties and Plaintiffs seek "actual damages" from Defendants. Defendants argue that because Plaintiff Whiting claims that he is a trustee and executor of Plaintiff ARD Properties, Defendants are entitled to discover Plaintiffs' relationships, including income Plaintiff Whiting has received from Plaintiff ARD Properties. In summary, "Defendants are primarily seeking discovery of information that speaks to the Plaintiffs' damages and information regarding the entity at the heart of this lawsuit, ARD Properties, and the Plaintiffs' relationships with each other." [Doc. 65 at 1].

---

their lease agreements and other contracts. Defendants moved to compel compliance with the subpoenas, and Plaintiffs filed a motion for protective order and a motion quash the subpoenas. On November 3, 2020, the Court entered an Order denying both motions. In relevant part, the Court found that Plaintiffs did not have standing to quash the subpoenas, and the Court declined to enter Plaintiffs' requested protective order that prohibited Defendants from inquiring into the personal income of Plaintiff Whiting. The Court noted, "Plaintiffs have not established good cause for the issuance of a protective order prohibiting *any* inquiry into Plaintiff Whiting's personal income." [Doc. 44 at 19] (Emphasis in original). The Court continued, "While Plaintiffs subsequently claimed that Plaintiff Whiting merely managed the Jackson Street [B]uilding, the Court finds that at least some discovery into Plaintiff Whiting's personal income is relevant and Plaintiffs have failed to establish specific prejudice or harm resulting from the absence of a protective order." [*Id.* at 19-20].

Plaintiffs state that their Amended Complaint removes all allegations related to lost rental income from any building. Plaintiffs state that they have both signed declarations explicitly disclaiming any damages arising from lost rents from any building. The Declaration of Plaintiff Whiting states, "I am not, and do not intend to, claim damages based upon any loss of personal income in the above-entitled litigation." [Doc. 40-1 at ¶ 2]. The trustee for Plaintiff ARD Properties, Connie Ammerman, states, "ARD Properties is not, and does not intend to, claim damages based upon any loss of rental income in the above-entitled litigation." [Doc. 61-2 at ¶ 3]. In addition, Plaintiffs state that the Jackson Street Building is owned by a trust and that Plaintiff Whiting is a beneficiary of that trust. Plaintiffs state that ownership of the Jackson Street Building is irrelevant because Defendants' retaliation in response to Plaintiff Whiting's post on that building is unconstitutional regardless of who owns the Jackson Street Building.

In addition, Plaintiffs argue that Defendants have not proffered an amount that would show the costs to repair and/or maintain the Pope Avenue Building, making Plaintiffs' financial information irrelevant. Plaintiffs further state that during the August 30 Hearing, Defendants' expert did not come to a conclusion about the amount required for repairs but stated it would be more than $30,000. Plaintiffs submit that their expert opined that the estimate for the roof repairs in 2019 would be between $51,000 to $96,000. Plaintiffs state that they have included declarations that they had access to $100,000 in September 2019, and therefore, Defendants' request for multi-year tax records, banking, and income information is unnecessary to establish this one fact.

As an initial matter, the present dispute is a result of Defendants' overly broad discovery requests and Plaintiffs' improper responses thereto. For instance, Defendants have requested a decade of tax returns from 2010 to 2020 from Plaintiff Whiting, any entity owned by Plaintiff Whiting, and Plaintiff ARD Properties. On the other hand, Plaintiffs' responses to Defendants'

discovery requests are not in accordance with the Federal Rules. By way of illustration, Defendants request that Plaintiffs describe in detail all damages that Plaintiffs are seeking as a result of the incidents alleged in the lawsuit. This appears to be a straightforward discovery request and one to which Plaintiffs would want to respond with sufficient details in order to avoid exclusion sanctions. *See* Fed. R. Civ. P. 37(c). Instead, both Plaintiffs respond, "Pursuant to FRCP 33(d), the plaintiff directs the defendants to the complaint, including all exhibits filed with the complaint, mandatory initial disclosures, and documents attached to this response. Additionally, plaintiff claims loss of rental income, costs of maintenance of building, lost use of building." [Doc. 65-3 at 8] (Plaintiff Whiting's response) [Doc. 65-4 at 5-6] (Plaintiff ARD Properties' response). Plaintiffs' responses are improper. *See In re Envision Healthcare Corp. Sec. Litig.*, No. 3:17-CV-01112, 2020 WL 6750397, at *2 (M.D. Tenn. Nov. 16, 2020) ("An interrogatory answer should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers.") (quoting *United States v. Life Care Centers of Am., Inc.*, No. 1:08-CV-251, 2016 WL 3198032, at *1 (E.D. Tenn. Mar. 24, 2016)) (other citations omitted).

Despite the above issues, the Court has considered the parties' requests. As mentioned above, Defendants seek such information, citing to paragraph forty-five (45) of Plaintiffs' Amended Complaint. Specifically, paragraph forty-five (45) states as follows:

> Because the City of Athens has threatened to demolish the Pope Avenue [B]uilding, Whiting is unable to perform any maintenance or repairs on said building until this lawsuit is completed, for fear that any such efforts and resources would be wasted if the City demolishes the building. Therefore, all deterioration of the Pope Avenue [B]uilding caused by an inability to repair or maintain said [B]uilding during the pendency of this lawsuit, are damages caused by [D]efendants."

[Doc. 56 at ¶ 45]. Defendants argue that they are entitled to challenge whether Plaintiffs were financially able to make the repairs. In addition, Defendants state that they are entitled to discover whether Plaintiffs have been monetarily damaged and to discover the relationship between Plaintiffs. For the reasons stated below, the Court finds Plaintiff Whiting's tax returns and financial information irrelevant, but the Court holds in abeyance the issue of Plaintiff ARD Properties' financial information, including tax returns.

With respect to paying for the repairs for the Pope Avenue Building, Plaintiffs have put forth evidence showing that in September 2019, Plaintiff Whiting's sister had access to a large amount of money and that she was willing and able to provide funds to Plaintiff ARD Properties to perform the repairs required on the Pope Avenue Building. *See* [Doc. 77-2 at ¶ 5] ("Declaration of Glenn Whiting"). Plaintiff Whiting's sister, Marie Gasser ("Gasser"), also filed a Declaration [Doc. 77-3], stating, "In September 2019, and thereafter, I was willing and able to provide funds to ARD Properties sufficient to perform the repairs required on the Pope Avenue Building at that time." [*Id.* at ¶ 7]. Gasser's financial adviser submits that in September 2019, Gasser had access to a large sum of money that was able to be withdrawn immediately. [Doc. 77-4 at ¶ 6]. Thus, it appears that Plaintiffs had not intended to be financially responsible for the repairs, and therefore, any information about their financial condition is irrelevant on this ground.

Defendants further assert that they are entitled to information to refute Plaintiffs' claims that they have been monetarily damaged by Defendants' actions. Plaintiff Whiting appears to have abandoned his claim that he was monetarily damaged, as he sets forth the following, "I am not, and do not intend to, claim damages based upon any loss of personal income in the above-titled litigation." [Doc. 40-1 at ¶ 2]. Thus, changes in Plaintiff Whiting's income are irrelevant;

however, the Court expects Plaintiff Whiting to amend his discovery responses to correctly reflect his damages' request in this case in accordance with Rule 26(e).

It is not clear, however, what damages Plaintiff ARD Properties seeks, if any. For instance, Connie Ammerman states that as the trustee for this entity, she "does not intend to claim damages based upon any loss of rental income in the above-entitled litigation." [Doc. 40-1 at ¶ 2]. Plaintiff ARD Properties' discovery responses claim as damages, "loss rental income, costs of maintenance, [and] lost use of building." [Doc. 65-4 at 5-6]. Later, in an email, Plaintiffs' counsel explains that the amount of damages is ongoing due to plaintiff's (presumably, Plaintiff Whiting's), inability to maintain the building." [Doc. 65-6 at 1]. Subsequently, in its Second Supplemental Response to Defendants' First Set of Interrogatories and Requests for Production [Doc. 65-13], Plaintiff ARD Properties states that its damages are based on "[P]laintiffs' inability to repair the roof on the Pope Avenue [B]uilding since September 2019" and that it would provide an expert report showing such. [*Id.* at 2-3]. Thus, it is not clear whether Plaintiff ARD Properties is still claiming costs of maintenance, lost use of building (and whatever that entails), and damages related to the inability to repair the roof and whether its financial information would reveal relevant information to such damages.

Further, Defendants also assert that they need Plaintiffs' financial information "to determine if Plaintiff Whiting and/or Plaintiff ARD Properties had a life, liberty or property interest in the Pope Avenue [B]uilding." [Doc. 65 at 13]. Defendants contend, therefore, they "must inquire into the status of the various entities, the relationship between the entities, the owners of the various entities, etc." [*Id.*]. At the outset, the Court notes that whether Plaintiff Whiting has a life, liberty, or property interest in the Pope Avenue Building should be easily resolved, but it appears that Plaintiffs have unduly complicated this rather straightforward question.

For instance, both Plaintiffs allege an ownership interest in the Pope Avenue Building. [Doc. 56 at ¶ 34]. In Plaintiffs' Response, they assert, "Mr. Whiting is a beneficiary of the ARD Properties trust. Plaintiffs, must, and will, provide evidence supporting this fact." [Doc. 78 at 5].[11] In relation to the instant filings, Connie Ammerman claims that she is the trustee of ARD Properties. [Doc. 61-2].

In Defendants' Motion for Summary Judgment, however, they state, "Upon information and belief ARD Properties does not exist." [Doc. 85 at 4]. It appears to the Court that Plaintiffs have produced information on an entity named "ARD Property Management" and not "ARD Properties," although Plaintiff ARD Properties responded in discovery that its legal name is "ARD Properties." [Doc. 65-4 at 2]. In Defendants' Motion for Summary Judgment, the legal documents for ARD Property Management show that Plaintiff Glenn Whiting is not a trustee of that entity. [Doc. 86 at 186-200]. Defendants also submitted documents showing that ARD Property Management is the recorded owner of the Pope Avenue Building. [Doc. 85 at 5].

Given that it is not clear what damages Plaintiff ARD Properties is claiming in this case and it appears Defendants have sufficient information regarding the ownership of the Pope Avenue Building, the Court **ORDERS** the parties to meet and confer and discuss, in detail, these issues. Specifically, Plaintiff ARD Properties **SHALL** explain to Defendants the damages it is claiming in this case and the proper legal name of Plaintiff ARD Properties within seven (7) days of this Memorandum and Order. The parties **SHALL** then conduct their meet and confer to determine whether Plaintiff ARD Properties' financial information is relevant in light of the above answers. The parties **SHALL** file a joint status report within fourteen (14) days of the instant Memorandum

---

[11] Plaintiffs also state, "Production of this evidence has been withheld pending this Court's ruling on the instant motion and cross motion." [Doc. 78 at 5]. It is entirely unclear to the Court why Plaintiffs have withheld such evidence in this case, but the Court admonishes Plaintiffs that the withholding of any relevant evidence may lead to sanctions pursuant to Rule 37.

and Order, detailing the results of the meet and confer and a brief description of their responsive positions if they still disagree.

## C.    Plaintiffs' Motion to Depose

Plaintiffs seek leave pursuant to Rule 30(a)(2) to depose additional witnesses. Specifically, Rule 30(a)(2) provides as follows:

> A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2):
>
> **(A)** if the parties have not stipulated to the deposition and:
>
> **(i)** the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by the third-party defendants.

Fed. R. Civ. P. 30(a)(2). "Because this limit is intended to curb abusive discovery practices, it stands to reason that a party wishing to conduct more than 10 depositions has the burden of persuading the court that these additional depositions are necessary." *Talismanic Properties, LLC v. Tipp City, Ohio*, 309 F. Supp. 3d 488, 497 (S.D. Ohio 2017) (quoting *Moore v. Abbott Labs.*, No. 2:05–CV–1065, 2009 WL 73876, at *1 (S.D. Ohio Jan. 8, 2009)). Courts have further explained that "the moving party must make a particularized showing why extra depositions are necessary." *Id.* (quoting *Moore*, 2009 WL 73876, at *1). Finally, "[a] district court has the discretion (and perhaps the obligation) to deny leave to take additional depositions when no good reason to do so has been presented." *Id.* (quoting *Moore*, 2009 WL 73876, at *1).

Specifically, Plaintiffs seek to depose the following individuals: (1) Cliff Couch, Chief of the Athens Police Department; (2) Mark Lockmiller, City of Athens Council Member; (3) Chuck Burris, former Athens Mayor and current City of Athens Council Member; (4) Nina Edmond, Head of the Athens Department of Human Resources; (5) Bo Perkins, City of Athens Council Member;

(6) Andy Brusseau, reporter; (7) Leslie Sellers, Defendants' expert; (8) Tom Biddle, brother of Defendant Trew's law partner; and (9) Bill Biddle, Defendant Trew's law partner.

The Court will address each individual separately.

### 1.     Cliff Couch, Chief of Athens Police Department

Plaintiffs argue that Cliff Couch ("Chief Couch") regularly attends a weekly meeting of the City's department directors held by Defendant Sumner.  Plaintiffs state that a heated dispute occurred during one of these meetings regarding Plaintiffs' awning.  Plaintiffs state that this dispute is alleged to have arisen from a City employee resisting Defendant Sumner's attempt to single out Plaintiff Whiting for regulatory harassment.  Plaintiffs state that previously deposed department heads have given different accounts of the dispute, although Defendant Sumner acknowledged that the dispute did occur.  Plaintiffs state that Defendant Sumner's testimony confirms information previously obtained by Plaintiffs from other sources.  Plaintiffs argue that Chief Couch can clarify not only whether the dispute occurred, but he can also testify to the emotions and content of the dispute.  Plaintiffs state that such information is relevant because it supports Plaintiff Whiting's allegation that Defendant Sumner singled out Plaintiff Whiting for regulatory harassment.  Plaintiffs state that Chief Couch also has knowledge of the investigation regarding Plaintiffs' stolen vehicle and that Chief Couch was present at the July 2019 meeting held by Council members.

With respect to any knowledge that Chief Couch has regarding the issue with Plaintiffs' awning, the Court finds that Plaintiffs have not made a particularized showing that Chief Couch's deposition on this topic is necessary or proportional to the needs of this case.  Plaintiffs state that Chief Couch attended a meeting where the awning was discussed.  Plaintiffs also state, however, that Defendant Sumner acknowledged that a dispute over the awning occurred at the meeting.

While Plaintiffs want to question Chief Couch about the exact content of the dispute or the emotions displayed at the meeting, the Court finds that these inquiries are not proportional to the needs of the case. Specifically, the Amended Complaint alleges as follows:

> [I]n May 2019, Defendant Sumner ordered the Building Inspector to issue a citation against Plaintiff Whiting and halt construction on roof improvements to an awning that had been installed on the Jackson Street Building over ten years earlier. The improvements to the awning had already been confirmed by several witnesses. These witnesses state that Building Inspector McConkey informed Sumner that several other buildings downtown had similar awnings, that all those awnings were also violating the same ordinance, and that if a citation was issued against Whiting[,] then it must also be issued against the other buildings' owners. In response[,] Sumner ordered the building inspector to only issue a citation to Mr. Whiting, ordering only Whiting's awning improvements be halted. Upon information and belief[,] owners and or occupants of the other buildings are friends and/or political supporters of Sumner. Witnesses state that when the building inspector refused to single out Mr. Whiting, a major dispute occurred between McConkey and Sumner in front of several City employees.

[Doc. 56 at ¶ 33]. It seems to the Court that Plaintiffs' discovery efforts should be directed to the Building Inspector, who, according to the Amended Complaint, has direct knowledge of the alleged differential treatment. In making this finding, the Court has considered the factors outlined in Rule 26(b). Specifically, while the issues in this case are important, the parties' relative access to relevant information, the importance of the requested discovery in resolving the issues, and the burden and expense all weigh in favor of denying Plaintiffs' request.[12] In addition, while Plaintiffs claim that there are differing accounts of what occurred at the meeting, they do not submit anything in the record to establish the differing accounts. Accordingly, the Court finds that Plaintiffs have not established their burden that Chief Couch's knowledge on this issue is necessary to this case.

---

[12] The Court has also considered the amount in controversy, but the Amended Complaint does not provide a specific dollar amount.

Plaintiffs also state that Chief Couch has knowledge of the investigation of the vehicle theft, which is background information to the instant lawsuit as described in the Amended Complaint. Other than generally claiming the failure to investigate is background information, Plaintiffs do not sufficiently explain how such discovery is relevant or proportional to the needs of the case. In reviewing the Amended Complaint, the Court agrees that there are many allegations regarding Plaintiff Whiting's stolen vehicle and the alleged failure of the police department to investigate. The Court finds, however, that the proper scope of discovery is not whether the police actually failed to investigate, but instead, whether Defendants retaliated against Plaintiffs for painting a sign about the alleged failure to investigate.[13]

Plaintiffs also request Chief Couch's deposition because he attended the July 2019 meeting. Because the Court has ordered the production of the audio recording of the July 2019 meeting, the Court finds Chief Couch's deposition on this topic unnecessary.

### 2. Mark Lockmiller, City of Athens Council Member

Plaintiffs request the deposition of Mark Lockmiller ("Lockmiller") because he was present during the July 2019 meeting. In addition, Plaintiffs argue that Lockmiller attended a work session, wherein Dr. Pelly attempted to raise the issue of John Coker's residency outside the city limit.

---

[13] The Court notes the Amended Complaint alleges that the police department refused to investigate because of the animosity toward Plaintiff Whiting held by city officials. [Doc. 56 at ¶ 17]. Defendants assert that "any claims arising out of the alleged stolen car are barred by the one-year statute of limitations." [Doc. 75 at 3]. Although Plaintiffs did not specifically respond to this argument, the Court notes that "[t]he statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises," which is one year in Tennessee. *Eidson v. State of Tennessee Dep't of Children's Servs.,* 510 F.3d 631, 634 (6th Cir. 2007). "Ordinarily, the limitation period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* at 635.

Plaintiffs state that Dr. Pelly's attempt to raise this issue at the work session is relevant to show that Defendants follow unwritten policies.

Because the Court has ordered the production of the audio recording of the July 2019 meeting, the Court finds Lockmiller's deposition on this topic unnecessary. With respect to Plaintiffs' argument that Lockmiller attended a work session, wherein the parties apparently disputed John Coker's residency, the Court finds such information irrelevant to the issues in this case.

### 3. Chuck Burris, Former Athens Mayor and Current Council Member

Plaintiffs request the deposition of Chuck Burris ("Burris") because he attended the July 2019 meeting. In addition, Plaintiffs state that Burris has personal knowledge of the differential treatment by Defendants, citing Defendants' investigation as to Dr. Pelly's residency "while Mr. Coker's lack of residency was simultaneously covered up for months." [Doc. 72 at 5]. In addition, Plaintiffs allege that Burris has personal knowledge of actions taken by Defendant Trew to ensure Dr. Pelly was not present at a disciplinary hearing.

The Court finds Defendants' investigation into Dr. Pelly's residence and the investigation and hearing as to the sexual harassment allegation against Dr. Pelly irrelevant to the issues in this case. Dr. Pelly is not a party to this lawsuit. Further, because the Court has ordered the production of the audio recording of the July 2019 meeting, the Court finds Burris's deposition on this topic unnecessary.

### 4. Nina Edmond, Head of the Athens Department of Resources

Plaintiffs argue that Nina Edmond ("Edmond") was present at the weekly department heads meeting. In addition, Plaintiffs argue that Edmond has personal knowledge of an event that resulted in disciplinary actions against Dr. Pelly. Plaintiffs insist that the City's subsequent

disciplinary proceedings against Dr. Pelly are relevant because they establish that the City ignores its own written policies in favor of unwritten policies and customs regarding due process. Plaintiffs state that such information is important to meet the high burden required under *Monell v. Dep't of Soc. Servs of City of New York*, 436 U.S. 658 (1978) for a judgment against the City.

The Court disagrees. With respect to Edmond's attendance at the weekly department heads meeting, for the same reasons described above, *supra* section III(C)(1), the Court finds her testimony not proportional to the needs of this case. Further, with respect to the investigation against Dr. Pelly, the Court finds such discovery irrelevant. Again, Dr. Pelly is not a party to this lawsuit. Plaintiffs insist that they must establish that the City ignores written policies and follows unwritten policies, citing *Monell,* but *Monell* does not give Plaintiffs a license to explore every instance where the City allegedly followed unwritten policies that are not relevant to the instant litigation. *See Monell*, 436 U.S. at 694 (finding that a local government is liable when execution of a government's policy or custom, inflicts the injury that the government as an entity is responsible under § 1983.).

In order to establish *Monell* liability, Plaintiffs "must point to a municipal 'policy or custom' and show that it was the 'moving force' behind the constitutional violation." *Crabbs v. Scott*, 800 F. App'x 332, 336 (6th Cir. 2020). The City's alleged ignorance of its written policies in favor of unwritten polices unrelated to the allegations in this case is not the *moving* force behind Plaintiffs' alleged constitutional violations. *See Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996) (explaining that a plaintiff "must also show a direct causal link between the custom and the constitutional deprivation; that is, she must show that the particular injury was incurred *because* of the execution of that policy") (internal quotations omitted). If Plaintiffs' argument was correct, the parties would be entitled to

discover every instance where the City followed an unwritten policy, regardless of whether the City's conduct affected Plaintiffs. Such discovery would not be relevant or proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

Here, the Amended Complaint alleges that Dr. Pelly was sanctioned by the Council for sexual harassment, but another member of the Council was not sanctioned when that member admitted he broke traffic laws. Plaintiff Whiting filed a complaint against the member who admitted to breaking the traffic laws and the complaint was ignored for over six months, unlike the complaint filed against Dr. Pelly. While such allegations are included in the Amended Complaint, they bear no relevance on Plaintiffs' causes of action, which relate to Plaintiffs' First and Fourteenth Amendment rights. Accordingly, the Court finds Plaintiffs' request to depose Edmond not well taken.

**5.      Bo Perkins, City of Athens Council Member**

Plaintiffs request the deposition of Bo Perkins ("Perkins") because he attended the July 2019 meeting and he has personal knowledge of a work session wherein the Council refused to allow Dr. Pelly to discuss the residency of John Coker. Accordingly, for the same reasons as explained above, the Court finds such discovery irrelevant.

**6.      Andy Brusseau, Reporter**

For the reasons stated above, *see supra* section III(A), the Court finds Brusseau's deposition unnecessary.

**7.      Leslie Sellers, Defendants' Expert**

Plaintiffs state that Leslie Sellers ("Sellers") is Defendants' rebuttal expert. Defendants have no objection to Plaintiffs deposing Sellers. Accordingly, the Court finds Plaintiffs may

proceed with Sellers's deposition. *See* Fed. R. Civ. P. 30(a)(2) (explaining that the parties may stipulate to the deposition). [14]

### 8.    Tom Biddle, the brother of Defendant Trew's Law Partner

Plaintiffs state that Tom Biddle introduced Plaintiff Whiting to the previous owners of the Pope Avenue Building and later helped with negotiations between Plaintiff Whiting and the previous owner for Plaintiff ARD Properties to purchase the Pope Avenue Building, which occurred in 2003. Plaintiffs state Tom Biddle has personal knowledge of Plaintiff Whiting's extensive involvement in ARD Properties and in ARD Properties' purchase of the Pope Avenue Building. In addition, Plaintiffs claim that Tom Biddle has knowledge of Plaintiff Whiting's plans for the Pope Avenue Building as stated by Plaintiff Whiting to Tom Biddle at the time Plaintiff ARD Properties purchased the Pope Avenue Building. Plaintiffs argue that Defendant Trew failed to notify Plaintiff Whiting about the August 30 Hearing and that Defendant Trew knew of Plaintiff Whiting's legal interest in the Pope Avenue Building. Plaintiffs state that Defendant Trew has denied such knowledge and that Tom Biddle's testimony will directly contradict Defendant Trew's denial.

The Court finds Tom Biddle's knowledge regarding Plaintiff Whiting's involvement in Plaintiff ARD Properties irrelevant. As Defendants argue, the relevant inquiry is whether Plaintiff Whiting actually has a legal interest in the Pope Avenue Building, such that he was legally entitled to receive notice with respect the August 30 Hearing. In addition, Defendants state, "It is undisputed that Defendant Trew knew Mr. Whiting had a relationship with the [Pope Avenue

---

[14] Plaintiffs also argue that they are unable to effectively depose Sellers because Sellers's disclosure is inadequate. Plaintiffs state that they intend to file a motion requesting that Sellers be excluded from testifying. Later, Plaintiffs filed a motion to limit expert testimony [Doc. 83], requesting that the Court prohibit Defendants' use of any evidence arising from Sellers in support of Defendants' dispositive motion and at trial.

Building]." [Doc. 75 at 9]. Further, any knowledge that Tom Biddle had of Plaintiff Whiting's intent for the Pope Avenue Building in 2003, when it was purchased, is not relevant to the condition of the Pope Avenue Building in 2019.

**9.      Bill Biddle, Defendant Trew's Law Partner**

Plaintiffs request the deposition of Bill Riddle for similar reasons as above—that is, Bill Biddle has knowledge of Plaintiff Whiting's interest in Plaintiff ARD Properties and that Defendant Trew was aware of Plaintiff Whiting's legal interest. As explained above, the Court finds such information is irrelevant.

**IV.      CONCLUSION**

Accordingly, for the reasons stated above, the Court **GRANTS IN PART** Andy Brusseau's Motion to Quash [**Doc. 47**], **GRANTS IN PART** Plaintiffs' Motion for Protective Order, [**Doc. 61**], **DENIES IN PART** Defendants' Motion to Compel [**Doc. 65**], and **GRANTS IN PART** Plaintiffs' Motion to Depose [**Doc. 72**]. The Court **HOLDS IN ABEYANCE** Defendants' request for Plaintiff ADR Properties' financial information and tax returns pending the joint status report from the parties.

**IT IS SO ORDERED.**

ENTER:

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge